J. H. MOORE, Administrator, *v.* A. J. LASSITER *et al.*

1. PRINCIPAL AND SURETY. *Pending litigation. Original surety. Order of liability.* A person who becomes the surety of the principal debtor, in the course of legal proceedings to collect the debt, makes himself liable before the original surety for the debt, or any prior surety for the debt after its creation, and, therefore, to an earlier surety in the course of the same legal proceedings.

2. SAME. *Intermediate court. Bond given to bring cause into. Appeal to higher court. Effect upon surety.* A surety in the course of judicial proceedings at law upon a bond given to bring the case into an intermediate court for the correction of errors, is only bound for the proper judgment of that court, and the appeal in error of the principal to a higher court by means of a new bond, does not make the surety an appellant, but he continues in court by his bond, which under the statute is made a part of the record, and is liable thereon for such judgment as the court below should have rendered.

3. SURETIES. *Certiorari bond. Surety on appeal to circuit court. Appeal to Supreme Court. Surety of. Order of liability.* As between the surety on a *certiorari* bond to bring a justice's judgment into the circuit court, and the surety of appeal from the circuit to the Supreme Court, the latter is primarily liable.

FROM GIBSON.

Appeal from the Chancery Court at Trenton. JNO. SOMERS, Ch.

T. E. HARWOOD for complainant.

M. M. NEIL and COOPER & HAYS for defendants.

COOPER, J., delivered the opinion of the court.

B. M. Taylor recovered a judgment before a justice of the peace against W. A. Ridley, E. G. Wood and J. N. Moody, on a promissory note executed to him

by Ridley as principal, and by the other two defendants as sureties. W. F. Blakemore became a stayer on the judgment, the entry on the justice's docket reciting that he was "stayer for all the parties." Afterward, upon his petition for the purpose, Blakemore obtained writs of *certiorari* and *supersedeas* to bring the case into the circuit court, and to supersede an execution on the judgment which had been levied on certain personalty as his property, upon giving a bond with security in double the amount of the judgment, conditioned to prosecute the writ with effect, or perform the judgment which shall be rendered in the cause. Upon the motion of the plaintiff in the judgment, the petition was dismissed, and a judgment rendered against Blakemore. and his sureties on the bond for the debt, interest and costs. J. M. Moore, the intestate of complainant J. H. Moore, was one of these sureties. Blakemore alone prayed an appeal to the Supreme Court, which was granted upon his giving bond with security, in double the amount of the judgment, conditioned to abide by and perform the judgment, sentence or decree of said Supreme Court in the premises. The judgment was affirmed by the Supreme Court, and a judgment rendered against Blakemore and the sureties, both on the *certiorari* and the appeal bond, for the debt, interest, cost of the circuit court, and cost of the Supreme Court. The defendant, A. J. Lassiter, was one of the sureties on the appeal bond. The judgment was against J. M. Moore as surety on the *certiorari* bond, and against A. J. Lassiter as surety on the appeal bond. J. M. Moore paid

the judgment. The present bill was filed by J. H. Moore, as administrator of J. M. Moore, who had died, to hold Lassiter primarily liable, as between him and J. M. Moore, for the amount thus paid, and to be subrogated to the rights of Blakemore, as stayer of the justice's judgment, against the defendant, J. N. Moody. It also sought to set aside a fraudulent conveyance of property made by Lassiter, and to subject the property to the satisfaction of the recovery. On final hearing, the chancellor dismissed the bill as to Moody, being satisfied from the proof that Blakemore had not stayed the justice's judgment at his instance. But the chancellor was of opinion that the complainant was entitled to the relief sought as against Lassiter, and rendered a decree accordingly. Both parties appealed from the decree, the appeal of Moore being limited to that part of the decree releasing Moody. The Referees report that the decree should be affirmed as to Moody, but reversed as to Lassiter. The complainant excepts.

The right of the complainant to relief against Moody turns upon a question of fact. Did Blakemore stay the justice's judgment at the request, or with the consent of Moody? The chancellor and the Referees both find that he did not, and in this conclusion we concur. Blakemore himself testifies that Moody was opposed to staying the judgment, and that he, Blakemore, acted upon the suggestion of Wood, the other surety, who was a partner of Moody and present at the interview, that it would be all right. Wood was anxious that the judgment should be stayed, and made

the suggestion after Moody had left him and Blakemore. As he turned off Moody made some remark, not in itself amounting to an authority to Blakemore to stay the judgment for him, but from which, Blakemore says, he drew the inference that he might do it. The evidence is insufficient against Moody's positive denial.

The question on the other branch of the case is whether Lassiter, by becoming surety on the appeal bond, made himself primarily liable for the judgment and costs of the Supreme Court before the surety on the *certiorari* bond. It is conceded that a surety of appeal is liable before an original surety on the debt, against whom and his principal judgment has been rendered in the lower court, who does not appeal from the judgment, although his name be signed without authority to the appeal bond, and the judgment of the appellate court be rendered against him: *Coles* v. *Anderson*, 8 Hum., 489; *Briggs* v. *Hinton*, 14 Lea, 233. So is the surety, at the instance of the principal alone, for the stay of execution: *Chaffin* v. *Campbell*, 4 Sneed, 184. So is the surety on a delivery bond in which the original surety refuses to join: *Brown* v. *McDonald*, 8 Yer., 158. And the rule is general that one who becomes surety in the course of legal proceedings against the principal has no right of contribution against the original surety for the debt, but, on the contrary, the latter is entitled to be subrogated to the creditor's right against him: *Tennessee Hospital* v. *Fuqua*, 1 Lea, 612, and cases there cited. The reason for all these rulings is that

the new surety, by joining the principal in a bond by which he obtains time in the collection of the debt, changes the terms upon which the original surety was bound, and prejudices his rights. The result is precisely the same as if the debtor had obtained time by giving a new obligation with new sureties, so far as the original surety is concerned.

But the same reason, under the same circumstances, equally applies to a surety who becomes such after the creation of the original debt, and of course to an earlier surety in the course of legal proceedings, or to any person upon whom the character of surety is cast by the nature of the transaction, or by law. It has accordingly been held by the court of appeals of New York that a purchaser of land, who is compelled to pay a judgment against his vendor which was a lien on the land, and of which he was ignorant, was so far a surety of the vendor that a release by the judgment creditor of the sureties of appeal of the judgment debtor, in the suit brought to collect the debt, discharged the judgment lien: *Barnes* v. *Mott*, 6 N. Y., 397. "The sureties upon the appeal," say the court, "intervened as volunteers, and by their interposition got time for the principal debtor, to the prejudice of the prior sureties, and of the plaintiffs whose lands were bound for the judgment, and they must be considered in equity as in the same condition as any other sureties undertaking for the payment of the judgment. Their obligation enured to the benefit, not only of the creditors, but of any and all who had become before them in any way sureties for the

payment of the debt. There is no distinction recognized between those originally bound, and those becoming bound by some subsequent act." The same high court has applied the doctrine to the case of sureties in legal proceedings, where one set of the sureties become bound for the judgment of an intermediate court, and the other set become subsequently liable for the judgment of the court of appeals. The latter sureties, say the court, secured delay by agreeing to pay the judgment. The earlier sureties may have been injured, and justice would seem to demand that, between parties thus situated, the primary liability should rest upon those who intervened to procure the delay. Upon the affirmance of the judgment by the intermediate court, the first sureties had a right to pay the same, and to be substituted to the rights of the plaintiff in the judgment, and to enforce the same against the defendant. In that case, upon appeal to the court of appeals, the undertaking would necessarily enure to the benefit of the first sureties as equitable owners of the judgment, and upon affirmance in the court of appeals they could enforce it against the second sureties. The latter agreed, upon the contingency of affirmance, to stand in the place of their principal, and to pay the judgments. In effect they became sureties to the first set of sureties: *Hinckley* v. *Kreitz*, 58 N. Y., 583. The same principle, in a case involving the equity between sureties, was recognized in *McCormick* v. *Irwin*, 35 Penn. St., 111.

These principles are denied by the learned counsel of the defendant. Nor do they claim that there is

any case for contribution between sureties, for the obvious reason that there can be no contribution except where the sureties are bound for the same liability: 1 Lea, 612. What they do contend for is, and so the Referees find, that the appeal of Blakemore made the sureties on the *certiorari* bond also appellants, and the surety of appeal became their surety. If the sureties on the *certiorari* bond were not appellants, the case would therefore fall within the general rule.

The appeal from the judgment of the circuit court was taken by Blakemore alone, and the sureties on the appeal bond bound themselves for his acts alone. The sureties on the *certiorari* bond neither prayed nor obtained an appeal, nor joined in an appeal bond, all pre-requisites to an appeal. To treat them as actual appellants, under these circumstances, would be a plain violation of the statutes. Nor is it at all necessary to resort to such a *tour de force* to bring these sureties before the appellate court. The appeal or appeal in error of the principal vacates or suspends the judgment, not only as to him but as to his sureties, who are only liable in the event the judgment is enforceable against the principal. And by a statute of an early date, brought into the Code, all bonds and recognizances taken according to law in the appellate court, or in the court below, in the progress of a cause, form a part of the record, and judgment may be rendered thereon by the appellate court, to the extent of the respective liabilities of the parties, upon motion, without *scire facias* or notice: Code, secs. 3109, 3137, 3161, 3166, 4499. In case of successive

Moore *v.* Lassiter.

appeals, or successive proceedings for the correction of errors, the court finally determining the cause renders such judgment on the bonds for an intermediate appeal as should have been rendered by the court to which the appeal was taken: *Howell* v. *Sevier*, 1 Lea, 95; *Dawson* v. *Holt*, 12 Lea, 27.

In the earliest case in which the statute requiring a copy of an intermediate bond to be made a part of the record was considered, the court seems to have had some difficulty in settling the principle which should control its construction, and, while recognizing the fact that no appeal was ever taken by the sureties, and that their names were never used in the cause, appear to think that the end proposed by the statute could only be attained by treating the principal as the agent of the sureties, and his appeal as the appeal of the sureties: *Stump* v. *Sheppard*, Cooke, 191. The same difficulty was taken under consideration in *Whiteside* v. *Hickman*, 2 Yer., 358, where each of the three judges gives a separate opinion, assigning different reasons for the faith that was in him. Judge Catron adhered to the practice of the Cooke case, the only question before the court being whether the appeal of the principal gave jurisdiction to render a judgment on an intermediate bond. Judge Peck thought that the principal might be considered as the agent of the sureties for the purpose of an appeal, unless the latter dissented in the court below and severed from the appeal or writ. Judge Whyte dissented from the views of both of his brother judges, upon the ground that there could be no appeal by the sureties except

by actually joining in praying for, and perfecting it, and that it would be absurd to hold them liable by mere intendment. The truth is, the sureties are brought up to the appellate court by the bond executed by them, which is made a part of the record by statute, and upon which, and not upon the judgment below, the judgment of the appellate court is rendered. This is made plain by two considerations. In the first place, the judgment of the inferior court may be in favor of the sureties, and yet the higher court, upon the appeal of either of the principal litigants, may render such judgment against the sureties as the court below should have rendered. In the second place, if the sureties for an intermediate appeal are to be treated, upon the appeal of their principal to a higher court, as appellants, the same judgment would be rendered against them by the higher court as against their principal. But it was early settled, and has been invariably held, that the judgment of the higher court against such sureties was only such a judgment as the court below should have rendered: *Hawkins* v. *Thornton*, 1 Yer., 136; *Kennedy* v. *Jack*, 1 Yer., 82; *Duncan* v. *McGee*, 7 Yer., 103; *Howell* v. *Sevier*, 1 Lea, 95; *Dawson* v. *Holt*, 12 Lea, 27. And it need scarcely be said that no dissent of the sureties in the court below, or severance from the appeal or writ, would prevent the sureties from going up to the higher court, not by the appeal, but by their bond, which the statute makes a part of the record, and authorizes a judgment to be rendered upon.

The appeal of the principal alone does not make

Moore *v.* Lassiter.

the sureties appellants, any more than the appeal of the opposite party.    No matter by whom the appeal is taken, the sureties are before the appellate court, by their bond, under the statute.    And the sureties can not prevent this by any thing they may do.    They may, of course, join in the appeal, and thereby make themselves liable as principals, as was done in *Cowan* v. *Duncan*, Meigs, 470.    In all other cases, they are in court by their bond, and their liability is limited, as the universal rule of suretyship, by the terms and conditions of their bond.

The proper judgment, on the Blakemore appeal to this court, against the sureties on the *certiorari* bond, would have been for the amount of the judgment of the circuit court and the costs of that court, and against the sureties of appeal for the entire amount of the debt and costs adjudged by this court against their principal.    But the complainant can not be prejudiced by the form of the judgment, as between him and the defendant, Lassiter:    *Briggs* v. *Hinton*, 14 Lea, 233; *Coles* v. *Anderson*, 8 Hum., 489.    The latter is primarily liable, as between them, for the entire debt and costs paid.

The report of the Referees will be modified accordingly, and the decree of the chancellor affirmed.    The costs of this court will be paid, one-half by the complainant, and the other half by the defendant Lassiter. The costs below, and future costs incurred in executing the decree, will be paid as ordered by the chancellor.

Moore *v.* Lassiter.

Dissenting opinion by FREEMAN, J.

The question in this case is, whether Moore is entitled to recover of Lassiter the amount of a judgment of this court paid by the former. The facts are: "Blakemore obtained writs of *certiorari* and *supersedeas* to bring a case into the circuit court, an execution having been levied on certain personalty of the property of said Blakemore.. J. M. Moore gave the usual prosecution bond, as surety for Blakemore, conditioned to prosecute the writ with effect, or perform the judgment which should be rendered in the cause." The circuit court dismissed the writs and rendered judgment against Blakemore and his surety for the debt and costs. Thereupon, Blakemore appealed to the Supreme Court, where the judgment of the court below was affirmed, and a judgment rendered against Blakemore and Moore as his surety, as in the circuit court, and also for costs of Supreme Court and interest by way of damages, also a judgment against Lassiter on the appeal bond. Moore paid this judgment, and now files this bill for reimbursement. by Lassiter. The question is, has he an equity or legal right to such recovery? This, I think, depends on the question, whether Moore has paid a judgment or discharged a legal liability, which was not a primary one on him, by reason of the legal obligation of his bond under the facts stated, or was not included in his undertaking when he signed it. The main theory of the opinion heretofore delivered is, that the contract of Moore, the surety on the *certiorari* bond, has been

Moore *v.* Lassiter.

interfered with, and his legal rights infringed upon by the interposition of the last surety for the appeal to this court. On this point I take it the whole case of complainant turns. It seems to me this element is absolutely requisite to support the claim of reimbursement set up in the bill. If there has been no change of his rights, nor alteration whatever in his legal obligation as undertaken by himself, he is bound to perform that obligation to its letter, and no one else can be called on, either to meet it for him, or reimburse him when he has done so. This principle seems to me too elementary to need authority. What then was the legal extent of the obligation of Moore, the surety? That the law of the case enters into and becomes part of the contract in every legal undertaking, is now an established axiom in our jurisprudence, and this both as to the measure of legal obligation, as well as effectiveness of remedy for its enforcement. This is too well settled also to need authority. The undertaking is to prosecute with effect or perform the judgment which shall be rendered— that is, legally rendered—in the case.

By our Code (T. & S., section 3137), M. & V., section 3853), it is provided, in cases of appeal, that is, by the principal, "upon affirmance of the judgment or decree below, or recovery of a larger amount, or for dismissal of the *certiorari* for want of prosecution, or for any other cause, the court shall enter up judgment for the amount recovered against the principal and the sureties to the prosecution bond, with interest, etc., from the date of the judgment or decree below,

41—VOL. 16.

and all costs. In all such cases this court renders such judgment as the court below should have rendered, that is, a judgment for the debt, interest and costs up to the date of the rendition of such judgment which has been appealed from: 12 Lea, 29, 30. To enable the court to do so, it is provided )section 3878, M. & V.): "Bonds taken for the prosecution of appeals are a part of the record of the appellate court, on which judgment may be rendered at any time against the appellant and his sureties, *without* notice."

In view of these provisions, and our decisions on them, does it not follow, that when J. M. Moore signed the bond, the law of his undertaking was, that he should abide by and perform the judgment that might be rendered in the case according to the existent law, the settled construction of which was and is, that he should be liable to a judgment in this court, on appeal of his principal, for such judgment as the court below ought to have rendered; that is, on dismissal of *certiorari,* for the debt as it then existed in the circuit court, and for the costs of that court, and that without notice? His undertaking fixed the liability, and so he is not to be notified. As properly said, in Judge Cooper's opinion in this case, the judgment of this court was erroneous in giving it for the costs of this court, and as I think, probably also wrong in rendering it for interest, as that was probably included in the appeal bond given for appeal to this court. Certain it is, the costs of the appeal could not properly be adjudged against him here: 11 Lea, 506

If this be a correct view of the nature of his obligation, then no legal wrong has been done him by the appeal, no term of his contract has been infringed, no change made in it, and he has no ground of complaint when he has paid a judgment to which he has subjected himself by the terms of his undertaking. For the purposes of this judgment he was, by law, under his undertaking, a *quasi* party to the appeal. This he was bound to know, as the statute provided for such judgment without further notice. He had no power to object to his principal's appealing, as it was within the terms of his contract, and that appeal rendered him liable to the judgment for debt below and costs.

If he desired a release from the liability incurred, the law provided a remedy for him by giving five days' notice to his principal of his motion, and a motion or rule to give counter security to indemnify him against liability as surety: Code (M. & V.), sec. 4415. And by next section it is provided, " on failure to comply with the rule, the court will dismiss the suit and give judgment against the principal and surety for the costs already accrued." The plaintiff, however, may, in such cases, prosecute his suit in *forma pauperis,* in which the surety will only be liable for costs accruing up to the time of giving the notice.

In support of the main proposition, I add here, suppose the principal in this case had appealed to the Supreme Court in *forma pauperis,* would not Moore have been liable, no release having been had in the court below, to a judgment for debt and costs, pre-

cisely as in the case where a surety is given? Could he have complained, in such a case, that his contract had been altered, or that he was not primarily liable to the judgment for debt and costs accrued in the circuit court? Why not? The delay has been had by appeal, and the judgment rendered in this court on the appeal, after the delay occasioned by it. The reason would be, that such was his contract, and as the party had the right to appeal by the terms of that contract, he had as much right to appeal in *forma pauperis* as by giving bond, and so his surety could not complain. To make the case stronger, suppose his principal had been released from a large part or all of the debt by the judgment of the court below, by a claim of payments made on the judgment, and the creditor had appealed, and this court had reversed that judgment, disallowed the credits, and given judgment, as it would have done, for the whole debt and costs of the court below, could the surety have objected? Certainly not. Yet here is a delay created by an appeal of the party to whom the bond is given, or for whose benefit it is taken, and yet the surety liable. This shows the theory of a change of contract is not sound, as I think.

The case of *Coles* v. *Anderson & Griswell,* 8 Hum., 488, has no analogy to the case now under consideration. It was a suit against the principal and his accommodation. endorser, in which the endorser employed no attorney; an appeal from the judgment rendered was prosecuted, and the name of the endorser placed on the bond, the signing and prayer for appeal being unauthorized. It was simply held, that he was

not bound, because he had not appealed. It was added, he was not liable, because of the delay thus obtained, by which he suffered loss, the slaves of the principal having been run off during the pendency of the appeal. This is all clear, but the principle is no liability on an appeal not authorized by the party. But, as we have seen, such an appeal, with the result of a judgment for debt and costs, was authorized by the terms of Moore's undertaking. For these reasons, I think the law of this case is, that Moore's original undertaking involved and included a judgment for debt and costs of the circuit court; that this liability was equal to a judgment in the Supreme Court, if his principal appealed, and so involved the right on his part to appeal without Moore's consent, and that when the proper judgment was rendered it was a primary liability of Moore's, no wise affected by Lassiter's suretyship on the appeal bond, and so he has no right or equity to reimbursement from Lassiter. The latter, I think, is liable secondarily for debt and costs below, if Moore failed, and primarily for costs of the appeal, and probably for the interest or damages from date of appeal.

It is proper to add, that I do not think the fact that the remedy or right is placed on the ground of subrogation changes the principle in the slightest. It is still a question, whether on the facts complainant has an equity to be reimbursed on the facts of this case, and whether you give the relief directly or by subrogation to the right of the creditor, goes only to the form or process by which the end is reached, and

not to the basis of the right. The cases cited of successive sureties on sheriffs' and other like bonds, I think, have no application to this case, because the rules of law are entirely different in their provisions as to bonds such as we now consider, and such bonds as are found in those cases. One statute has defined, as we have shown, and fixed the nature of the undertaking, one term of which is, that such appeal may be taken and the party still be liable to judgment on his bond; another, that the appeal of the principal takes his bond and him as *quasi* party to the appellate court without notice, and makes him subject to such judgment as the court below should have rendered. This is to be done in the appellate court, and so the judgment is precisely what he contracted for, and the appeal, with another bond or in *forma pauperis,* before such judgment, is necessarily implied. For these reasons, after mature consideration, I am unable to agree to the conclusion reached by a majority of the court.

TURNEY J., concurring.

### PETITION TO REHEAR.

Upon petition to rehear, COOPER, J., said:

In the opinion delivered in this case at a former day of this term, it was held that a person who becomes the surety of the principal debtor, in the course of legal proceedings to collect the debt, makes himself liable before any prior surety for the debt, and, there-

fore, to an earlier surety in the course of the same legal proceedings. As a consequence of the general principle thus announced, it was decided that between the complainant's intestate as the surety of the debtor on a *certiorari* bond to bring a justice's judgment into the circuit court, and the surety of appeal from the judgment of that court to the Supreme Court, the latter surety is primarily liable. In support of the conclusion reached, besides authorities from other States, a number of our own decisions were cited, commencing with 8 Yerger and coming down to 14 Lea. It was said in the opinion delivered, that the reason for all these rulings is that the new surety, by joining the principal in a bond by which he obtains time in the collection of the debt, changes the terms upon which the previous surety was bound, and prejudices his rights. The result to him is precisely the same as if the debtor had obtained time by giving a new obligation with new sureties.

The learned counsel of the defendant, in the petition for rehearing which he has presented and accompanying argument, takes the illustration in the last clause cited as if it were the case decided, and the change of terms mentioned as meaning the same in two distinct classes of cases, and, having thus built up a man of straw, undertakes to demolish it. The distinction between successive obligations made binding by law without the creditor's assent, and similar obligations made by direct contract with the creditor, is overruled, and consequently the distinction between exoneration and subrogation. A contract made by the

creditor with his debtor for delay, if valid, releases the prior surety who does not consent to it. An obligation authorized by the law, to which the creditor is not a party by contract, does not release the prior surety. He only becomes entitled to the benefits of the obligation by way of subrogation to the creditor's rights. Exoneration and subrogation are entirely distinct rights, although they both rest upon the same general principle of an interference with the surety's agreement, or, as it is commonly expressed, changing its terms. A surety has the right to stand on the very terms of his agreement, and any alteration, although it be for his benefit, if made without his consent by the creditor, discharges him: *Paine* v. *Jones,* 76 N. Y., 279; *Haden* v. *Brown,* 18 Ala., 643. If the alteration be made, through the instrumentality of the law, without the aid of the creditor, by the debtor and a new surety, the former surety is not discharged from liability to the creditor, but the latter surety becomes primarily liable, because the first surety is entitled to be subrogated to all the rights of the creditor upon payment of the debt. The two cases are analogous but not the same, and the change of terms spoken of in each is not identical.

Upon the idea that they are the same, the argument in support of the petition for rehearing insists that the terms of the contract of the complainant's intestate on the *certiorari* bond were not changed by the execution of the appeal bond by the defendant. And it is clear that those terms are not altered, so far as the creditor is concerned. Neither were they

altered in any of the cases in our books.   The prior surety remained liable to the creditor as before.   But the effect of the new security in all the cases was, if not to alter the terms of the obligation, to prejudice the rights of the first surety in precisely the same way as if it did alter the terms.   And so the courts have said, illustrating the character of the injury by reference to the change of a contract by the creditor and debtor.   Without the delay occasioned by the act of the new surety, the prior surety could proceed at once against the principal.   The contract between the first surety and the debtor is, in effect, changed, and, in analogy, even if the change be for the surety's benefit, still he is entitled, as between him and the new surety, to the indemnity furnished by the latter.

Our courts, in all the cases like the one before us, have recognized the principle laid down in the leading case of *Dering* v. *Earl of Winchelsea*, 1 Cox, 318, that one who becomes surety in the course of legal proceedings against the principal has no right of contribution against the original surety for the debt, but on the contrary, the latter is entitled to be subrogated to the creditor's rights against him.   The principle was quoted with approval by Judge McKinney, in *Chaffin* v. *Campbell*, 4 Sneed, 184, and would have controlled the ruling in that case if the statute itself had not provided for the respective liabilities of the original surety and the stayer.   It was recognized in *McNeilly* v. *Cooksey*, 2 Lea, 43, and *Tennessee Hospital* v. *Fuqua*, 1 Lea, 612, and is expressely adopted as

the law of this State by Chief Justice Deaderick in *Briggs* v. *Hinton*, 14 Lea, 239. And in the opinion delivered in the case now before us, the principle was extended, in accord with the authorities, to the case of successive sureties in the course of legal proceedings. The cases are decided upon the principle enunciated, and not upon the facts of each particular case, as contended for.

The petition makes the point that the equity of the surety will not arise if he consent to the giving of the new security, and that upon the pleadings in this case, the bill alleging the absence of such consent and the answer denying the allegation, the burden of proof is on the complainant, and he has made none. The counsel produces the syllabus of a recent decision of the supreme commission of Ohio to this effect, where the suit was by the creditor against the surety, and the latter pleaded in defense an extension of time given by the principal: *Bramble* v. *Ward*, 18 Am. L. Rev., 178. But even if it be conceded that this is the correct rule as between the creditor and the surety upon such a state of the pleadings, where the surety is *prima facie* liable upon the instrument sued on, it can have no application to a suit between successive sureties in the course of legal proceedings, there being no written or other positive contract between the parties, and the party, against whom the implication of liability primarily attaches, is seeking to relieve himself and cast the burden upon the prior surety. All of our authorities assume, if they do not directly decide, that the primary liability

is fixed by the date of the obligations, the sureties being liable in the inverse order of these dates.

The point is also made that, under our decisions, a contract for delay, after judgment, will not release the sureties, citing *Peay* v. *Poston,* 10 Yer., 112, and other cases. But the argument is based upon the identity of the case of a surety released by the act of the creditor, and the case of successive sureties. The two cases, as we have seen, are not identical, and the analogy misleading. The surety ceases to be such, so far as the principal is concerned, in the matter of delay or giving time by contract. But our authorities are uniform, that as between successive sureties, the fact of suretyship is as open to inquiry after, as before judgment.

It is contended, lastly, that there has been an officious payment of a part of the debt, under the ruling of *Briggs* v. *Hinton.* But in that case, the judgment of the Supreme Court was void as to Briggs, who did not sign or join in the appeal bond, the ruling being directly put upon that ground; while in this case the judgment against the complainant's intestate, he being before the court, was merely erroneous.

The petition for rehearing must be disallowed.