*HAMM v. HAMM.—204 S. W. (2d) 113.

Western Section. May 2, 1947.

Petition for Certiorari denied by Supreme Court, August 1, 1947.

*Opinion is also published and annotated in 175 A. L. R. 523.

124

126

Evans, Exby, Moriarty & Creson, of Memphis, for complainant-appellee.

Poston Cox, Divorce Proctor, and Sam F. Cole, Deputy Divorce Proctor, both of Memphis, for appellant.

ANDERSON, P. J. The record presents an important question concerning the right of one who has obtained a divorce in another state to challenge the validity of the decree on the ground that neither of the parties was domiciled in the divorce forum at the time the divorce suit was instituted. The case is here on a technical record and the question arises in this way: the bill was filed by the complainant in the chancery court of Shelby County, Tennessee, on March 26, 1946, against the defendant, Sara Nell Hamm, seeking a divorce on the ground of cruel and inhuman treatment. The defendant being allegedly a non-resident, service was had by publication. Complainant charges in his bill a course of conduct on the part of the defendant which makes out a case of cruel and inhuman treatment within the meaning of the divorce statute, and in addition avers that ''in April, 1944, a decree of divorce was filed in the chancery court of Poinsett County, Arkansas, in a case styled Harold Hamm vs. Sara Nell Hamm, the validity of which is questionable''. The prayer is for absolute divorce, and that the custody of a minor daughter be left with the defendant, and for general relief. Pro confesso was taken against the defendant, but the bill was answered by the Divorce Proctor. The answer sets up several reasons why the relief sought should not be granted. Summarized, these are, so far as necessary to be noticed, as follows: (1) because the complainant obtained a divorce from the defendant in the chancery court of Poinsett County, Arkansas, in April,

1944; and (2) because the decree of the Arkansas court having been rendered at the instance of the complainant, he is estopped to rely upon its invalidity, and if that decree be the result of an unlawful or fraudulent act on the complainant's part, he does not come into the chancery court of this state with clean hands, and is therefore in no position to invoke the aid of that tribunal; and (3) because by reason of the Arkansas decree the issues are res judicata.

The case was heard by the chancellor upon the original bill, the answer of the Divorce Proctor, the pro confesso against the defendant, and the testimony of the witnesses examined in open court. The result was a decree granting the complainant an absolute divorce on the ground of cruel and inhuman treatment. From this decree the Divorce Proctor appealed, as he was authorized to do by the Acts of 1945, Chapter 109. The findings of the chancellor, incorporated in his decree, in substance are as follows:

1. That neither the complainant, Harold T. Hamm, nor the defendant, Sara Nell Hamm, was at any time a resident citizen of, or domiciled in, the State of Arkansas within the meaning of the divorce laws of that State, and that neither the complainant, Harold T. Hamm, nor the defendant, Sara Nell Hamm, was a resident citizen of, or domiciled in, Poinsett County, Arkansas, or any other county in Arkansas, within the meaning of divorce laws of that state at the time of the filing of the divorce suit therein by the said complainant, Harold T. Hamm, against the said defendant, Sara Nell Hamm, nor at the time of the entry of the decree of divorce therein favor of the complainant, Harold T. Hamm.

2. That the proceedings and decree of divorce in the case of Harold Hamm, complainant, v. Sara Nell Hamm, defendant, in the Chancery Court of Poinsett County,

Arkansas, are null and void, and the said Chancery Court of Poinsett County, Arkansas, did not have jurisdiction of either party to the litigation or the subject matter thereof, and the said parties were then bona fide resident citizens of, and domiciled in, Shelby County, and had been for several years prior thereto.

3. That the only relief sought by the said complainant, Harold Hamm, in his suit for divorce in Poinsett County, Arkansas, against the defendant, Sara Nell Hamm, was an absolute divorce from the said defendant, Sara Nell Hamm, and that the only relief which he seeks in this action in this court is an absolute divorce from the defendant, Sara Nell Hamm.

4. That the original bill for divorce filed in this cause by the complainant, Harold T. Hamm, is also in the nature of a bill to declare his marital status.

5. That the marital status of the parties remained unchanged by the entry of the decree of divorce in the chancery court of Poinsett County, Arkansas.

6. That the facts charged in the original bill in this cause are true and that the defendant, Sara Nell Hamm, is guilty of such cruel and inhuman treatment or conduct towards her husband, Harold T. Hamm, complainant, as renders cohabitation unsafe and improper.

It will be observed at once that we do not have here a case where the sole object of the bill is to set aside the decree of the court of another state. Nor is equitable relief from the judgment of another court the primary object. Upon the contrary, for present purposes, we may assume that, as insisted, the pleadings before us present a collateral attack on the decree of a sister state made as a necessary incident to the primary relief sought, namely an absolute divorce.

■ Among other contentions made by the Proctor is one that the chancery court of Shelby County "acquired no jurisdiction to inquire into the validity of the Arkansas decree for the reason that no facts were pleaded respecting this issue." There seem to be two answers to this contention. One is that the adjudication was proper and necessary in determining the question of whether the complainant and the defendant were husband and wife. This is an issue in every divorce case. The other is that the issue was raised by the answer filed by the Proctor. The applicable rule is that in determining whether an issue embraced within a decree is within the scope of the pleadings, not only the bill but the answer must be looked to. Gibson's Suits in Chancery, Secs. 140, 555 and 556.

■ It is next contended that since the decree setting aside the decree of the Arkansas court is a judgment in personam, the court was without power to render it because the defendant was not served with process. It is insisted that "the defendant neither being served with process nor entering an appearance cannot be bound by a decree of the court setting aside the Arkansas decree under which she had valuable personal rights." "A suit for a divorce," it is contended, "is a proceeding sui generis, founded on the violation of the duties which the law enjoins and almost sounds in tort, and is for the redress of private wrong. It is strictly a personal action".

In support of these views, we are referred to Swan v. Harrison, 42 Tenn. 534, 545; Lingner v. Lingner, 165 Tenn. 525, 56 S. W. (2d) 749; Brown v. Brown, 167 Tenn. 567, 72 S. W. (2d) 557. We do not think these cases require the holding that, other questions aside, service of process on the defendant was essential to give the court jurisdiction to determine the validity or invalidity of the decree of the Arkansas court. The primary object of the

suit is to obtain a divorce. One issue is whether the marital relation subsists between the parties. In the present case this turns upon whether the decree of the Arkansas court was void. The chancellor was authorized to determine that as a necessary incident to granting the primary relief. If it were otherwise, no divorce could be granted except upon personal service for, as said, the issue of whether the parties were husband and wife is present in every divorce action.

█ Contrary to the Proctor's contention, the view entertained by the weight of authority is that the marital status or relation is itself a res in the sense that a proceeding affecting it alone is a proceeding in rem or quasi in rem where substituted service by publication is sufficient to answer the requirement of due process. Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279, 143 A. L. R. 1273; Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366; Geary v. Geary, 272 N. Y. 390, 6 N. E. (2d) 67, 108 A. L. R. 1293; Saul v. Saul, 74 App. D. C. 287, 122 F. (2d) 64. This is the view of the courts in this jurisdiction. Brown v. Brown, 155 Tenn. 530, 547; 296 S. W. 356; Toncray v. Toncray, 123 Tenn. 476, 485, 131 S. W. 977, 34 L. R. A., N. S., 1106, Ann. Cas. 1912C, 284. There are also observations of our Supreme Court in Rose v. Rose, 176 Tenn. 680, 145 S. W.(2d) 773, which, while not the basis of the decision, are pertinent. We have in mind the reference to the cases of State v. District Court et al., 66 Mont. 496, 214 P. 85, 33 A. L. R. 464, and Everett v. Everett, 22 App. Div. 473, 47 N. Y. S. 994.

█ See also 3 Freeman on Judgments, Secs. 1429, 1436, 1437. The recent case of Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279, 143 A. L. R. 1273, expressly overruled Haddock v. Haddock, 201 U. S.

562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, and held that a divorce decree, otherwise valid, obtained in one state against a nonresident defendant without appearance and upon constructive service of process only, was entitled to extra-territorial recognition under the full faith and credit clause of the Federal Constitution. Art. 4, Sec. 1.

The decision abolished the legal fiction erected by the Haddock case, under which the domicile of the wife was identified with that of her husband where the separation was due to her fault, and held that in such event the wife carries the matrimonial res to her domicile just as the husband also carries it to his own; that "both are characterized by the marital status, which does not belong exclusively to either, and of which each may be said to be seized per tout et non per my, as in the case of real estate which they own as husband and wife under tenancy by the entirety". Forster v. Forster, 182 (Wis.) 382, 46 N. Y. S. (2d) 320, 321, 322.

But the decision on the second appeal of the Williams case (Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1123, 157 A. L. R. 1366), reaffirmed the existing rule that a bona fide domicile in the divorce forum is essential to confer jurisdiction of the subject matter and, moreover, that one state could decline to recognize a decree of divorce rendered in the court of another where contrary to the findings of the latter in rendering the decree, the courts of the former find that the plaintiff in the divorce suit had not acquired such a domicile in the divorce forum, at least where that issue had not been litigated in a truly adversary proceeding. Gettys v. Gettys, 71 Tenn. 260, 31 Am. Rep. 637; Chaney v. Bryan, 83 Tenn. 589; Davis v. Davis, 305 U. S. 32, 59 S. Ct. 3, 83 L.

Ed. 26, 118 A. L. R. 1518; cf. Wolff v. Wolff, 134 N. J. Eq. 8, 34 A. (2d) 150.

So, other questions aside, there can be no doubt about the chancellor's authority to go behind the finding of the Arkansas court for the purpose of determining whether that tribunal had jurisdiction of the subject matter,[1] and, in the absence of the evidence, his finding as to the determinative facts of that issue is conclusively presumed to be correct. Freeman on Judgments, 5th Ed., Vol. 1, Sec. 375a; Vol. 3, Secs. 1366, 1371, 1436, 1437; 34 C. J. 1142; 27 C. J. S., Divorce, Sec. 335, p. 1300; 50 C. J. S., Judgments, Sec. 893, p. 502; Keezer, Marriage and Divorce, Sec. 555; Hopkins v. Hopkins, 174 Miss. 643, 165 So. 414, and cases cited.

The principal question for decision is whether the complainant is estopped to challenge the validity of the Arkansas decree by reason of having procured it himself, and practiced a fraud on the court in doing so. This is an important and troublesome question, about which there is a diversity of opinion. The cases on the subject are numerous and conflicting. It would be a work of supererogation to undertake to examine them. They are collected in the annotations appearing in 109 A. L. R. 1018; 122 A. L. R. 1321; 140 A. L. R. 914; and 153 A. L. R. 941.

The general rule elsewhere is that a party at whose in-

---

[1] The general rule confining the inquiry upon a collateral attack grounded on jurisdictional defects to the judgment roll or record proper, does not apply where the challenge is to the judgment of a sister or a foreign state. In addition to the authorities cited in the text, see Brown v. Fletcher's Estate, 210 U. S. 82, 28 S. Ct. 702, 52 L. Ed. 966; German, etc., Soc. v. Dormitzer, 192 U. S. 125, 24 S. Ct. 221, 48 L. Ed. 373; Andrews v. Andrews, 188 U. S. 14, 15, 23 S. Ct. 237, 47 L. Ed. 366; Kelly v. Hooper's Ex'rs, 11 Tenn. 395; Earthman's Adm'rs v. Jones, 10 Tenn. 484.

stance a judgment is rendered is not entitled, in a collateral proceeding, to contend that the judgment is invalid. In a number of jurisdictions it is held that neither want of jurisdiction, defect of procedure nor any other ground of invalidity can be availed of collaterally by the party who is responsible for the existence of the judgment. The rule has been frequently applied in actions for divorce where the decree was obtained in one state and afterwards attacked in another. Freeman on Judgments, Sec. 320; Note, 3 A. L. R. 535, 540; 17 Am. Jur. 575. The courts who have taken this view, however, seem to recognize that the rule applied by them does not rest on the doctrine of estoppel as that term is ordinarily understood. Freeman on Judgments, Vol. 1, Sec. 320; Vol. 2, Secs. 626 and 676; Bledsoe v. Seaman, 77 Kan. 679, 95 P. 576; In re Swales' Estate, 60 App. Div. 599, 70 N. Y. S. 220, affirmed 172 N. Y. 651, 65 N. E. 1122.

Thus it is said that "the question of whether the court had jurisdiction, either of the subject matter of the action, or of the parties, is not important in such cases. Parties are barred from such conduct, not because the judgment obtained is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated". Bledsoe v. Seaman, supra [77 Kan. 679, 95 P. 579]. The same principle has been applied to third persons. Kaufman v. Kaufman, 177 App. Div. 162, 163 N. Y. S. 566; see also Hubbard v. Hubbard, 228 N. Y. 81, 126 N. E. 508.

 With respect to judgments generally, early decisions in this State make it at least doubtful if our courts have been inclined to go that far. This disinclination is based upon the implications of the doctrine that a judgment in the absence of the requisite jurisdiction is void and binds no one. Cf. Stump v. Sheppard, 3 Tenn. 191; Overton's Lessee v. Lackey, 3 Tenn. 193; Smith v. Wal-

lace, 12 Tenn. 572; Clark's Adm'r. v. Stroud, 31 Tenn. 274, 275; McCadden v. Slausson, 96 Tenn. 586, 589, 36 S. W. 378; Walsh v. Crook, 91 Tenn. 388, 393, 19 S. W. 19; Moore v. Lassiter, 84 Tenn. 630; Tennessee Power Co. v. Rust, 8 Tenn. Civ. App. 368, 8 Higgins 368.[2]

Some of these cases are not precisely in point because they are not concerned alone with the rights of the party who obtained the judgment, but they all serve in varying degrees to indicate the ineffectiveness of a void judgment.

They are in accord with the forceful statement on the subject to be found in Freeman on Judgments, Vol. I, Section 332.

Notwithstanding imposing authority to the contrary, texts of distinction note a disinclination on the part of courts of high repute to hold that the absence of jurisdiction of the subject matter by reason of the lack of the required domicile by the plaintiff in the divorce forum can be supplied by estoppel. 3 Freeman on Judgments, 5th Ed., Sec. 1438.

Bishop, Marriage, Divorce and Separation, Sec. 187, says: "There cannot be a divorce jurisdiction by consent. And the principle upon which this proposition proceeds would seem to exclude estoppel, as either giving or taking away jurisdiction. The question has not been much considered by the courts; still we have some intimations, not all of which are quite beyond question, such as that a plaintiff who has accepted the benefit of a divorce de-

---

[2]If the nature of the proceeding in which the judgment is challenged is such that lack of jurisdiction of the subject matter can be made to appear (see footnote 1, ante page 133), the invalidating effect upon the judgment is incurable. It cannot be avoided by showing an appearance before the court, nor indeed in any way whatever. Agee v. Dement, 1839, 20 Tenn. 332; Kentucky-Tennessee Co. v. Dunlap, 181 Tenn. 105, 178 S. W. (2d) 636; Andrews v. Andrews, 188 U. S. 14, 15, 23 S. Ct. 237, 47 L. Ed. 366, 372, 373; 31 Am. Jur. 152; 14 Am. Jur. 386.

cree cannot deny the authority of the court by which it was rendered (citing cases). On the other hand, it has been held that one who has obtained such decree is not estopped to deny its validity (citing cases).'' See Andrews v. Andrews, 188 U. S. 14, 15, 23 S. Ct. 237, 47 L. Ed. 356.

The courts who decline to adopt and apply a rigid doctrine of estoppel have proceeded upon the theory that to do so would seriously interfere with the equally well established doctrine denying recognition to invalid foreign divorce decrees and circumvent some well established public policy.

Out of the conflict of decisions, particularly in the state of New York, there has emerged a distinction between actions involving matrimonial status alone and those involving the private or personal rights of the spouses. The cases recognizing this distinction hold the doctrine of estoppel or quasi estoppel inapplicable in the first class of cases and applicable in the second. The theory of this view is that in matrimonial actions, the state as well as the immediate parties has an interest in the outcome, and that public policy respecting the marital status outweighs any considerations which would deny to private litigants access to the court.

A leading case illustrating the class denominated ''matrimonial actions'' is that of Stevens v. Stevens, 273 N. Y. 157, 7 N. E. (2d) 26, 109 A. L. R. 1016. That was an action by a wife for separation in which the husband demanded a judgment of divorce on a counterclaim. By way of defense to the husband's action, the wife relied upon a decree of divorce obtained by him a few months before in Nevada. It was admitted the Nevada court was without jurisdiction, either of the cause or of the person of the wife, and that its judgment had no force in New York.

There was no subsequent marriage of either party. In concluding that the award of the Nevada decree to the husband should have no effect upon the right of either party to a full adjudication upon the conceded fact of their existing marital status, the court said:

"This is not a case in which one spouse, after having secured a foreign divorce decree not binding in this State on the other, attempts thereafter to assert in our courts a private claim or demand arising out of their marriage. There are situations in which such a private suit will be barred by the fact of the foreign decree."

. . . . .

"The present case involves a controversy essentially different in character. Here the court was invoked to pronounce judgment directly upon the marital status—a relationship which no stipulation or conduct of the parties could alter. Domestic Relations Law (Consol. Laws, c. 14), Sec. 51. See Fearon v. Treanor, 272 N. Y. 268, 5 N. E. (2d) 815, [109 A. L. R. 1229]. The husband's counterclaim is interposed as matter of statutory right. Civil Practice Act, Sec. 1168. Certainly a decree that is void cannot in itself be a reason why he should have less than his legal rights and we need not inquire what the result would be in some further event that has not happened." See also, Garman v. Garman, 70 App. D. C. 4, 102 F. (2d) 272, 122 A. L. R. 1317.

In the dissenting opinion in the case of Krause v. Krause, 282 N. Y. 355, 26 N. E. (2d) 290, 293, 294, the situation in the state of New York is summed up as follows:

"All the cited cases divide themselves into two categories. Fisher v. Fisher [254 N. Y. 463, 173 N. E. 680], Lefferts v. Lefferts, [263 N. Y. 131, 188 N. E. 279],

Stevens v. Stevens, [273 N. Y. 157, 7 N. E. (2d) 26, 109 A. L. R. 1016], Davis v. Davis [279 N. Y. 657, 18 N. E. (2d) 301] and Vose v. Vose [280 N. Y. 779, 21 N. E. (2d) 616] were matrimonial actions—cases that primarily involved a marital status asserted as such. In a case of that character the court has been constrained to declare the real fact of the relationship of the man and woman in accordance with the public policy of the State no matter what the consequent hardship of either of them.

"Starbuck v. Starbuck [173 N. Y. 503, 66 N. E. 193, 93 Am. St. Rep. 631], Bell v. Little, [204 App. Div. 235, 197 N. Y. S. 674; Id., 237 N. Y. 519, 143 N. E. 726], Brown v. Brown [242 App. Div. 33, 272 N. Y. S. 877; Id., 266 N. Y. 532, 195 N. E. 186] and Haynes v. Title Guarantee & Trust Co., [273 N. Y. 612, 7 N. E. (2d) 719] were not matrimonial actions. These were private suits. The claim in each case—though predicated of a marriage—was personal to an individual party. Hence room was found for consideration of equitable inducements conceived as affecting only the several parties to the litigation. So, Matter of Swales' Estate, 60 App. Div. 599, 70 N. Y. S.[2] 220; Id., 172 N. Y. 651, 65 N. E. 1122.

"Once you accept the rigor of our settled applicable rule of Conflict of Laws there is no disputing that the foregoing categories have a warrant that runs deep in the law 'Marriage being a public institution of universal concern, and each individual marriage or its dissolution affecting the rights not only of the husband and wife but of all other persons, the court sitting in a divorce cause should regard the public as a party thereto, and so far protect its interests as not to suffer the decree for dissolution or suspension to pass contrary to the real

---

[2]See note 2 on page 135,

facts and justice of the case'. 2 Bishop on Marriage, Divorce and Separation, Sec. 480. For the same reason judgment in a matrimonial action may not go by default and (though the defendant be absent) a hearing must none the less be had therein that in essence is a trial. See Redfield v. Critchley, 277 N. Y. 336, 341, 14 N. E. (2d) 377. In any other view, even a valid marriage might in effect be dissolved or altered by the parties themselves contrary to the declared public policy of the State.''

Illustrative of the extent to which the New York courts have gone in disregarding the hardship to either of the parties in declaring the real fact of the relationship, is the case of Querze v. Querze, 290 N. Y. 13, 47 N. E. (2d) 423, where a wife who procured an invalid foreign decree and then sued in New York for a divorce was held not estopped to assert the invalidity of the foreign decree even though, relying upon the validity of the divorce decree, the other party had remarried.

We think the division of the actions into two categories —one consisting of cases involving matrimonial status alone, and the other of cases involving the private or personal rights of the spouses,—is sound. But in adopting this view we do not have to go as far as the New York court did in Querze v. Querze, supra, in holding that in the circumstances stated, any resulting hardship on the parties is to be disregarded entirely. We do not think it necessary, in order to sustain the public policy of this state, to lay that down as an inflexible rule. We can conceive of cases where to disregard the consequences to one or both of the parties, or others, would be itself to go counter to a public policy of equal dignity perhaps, with that which in general looks to the permanency of the marital relation.

From what has been said, it is apparent that if we accept the classification of the New York court, the present suit is strictly a matrimonial action.

On the question of estoppel, the Proctor particularly draws our attention to the cases of Blume v. Blume, Sup., 6 N. Y. S. (2d) 516; McIntyre v. McIntyre, 211 N. C. 698, 191 S. E. 507; McNeir v. McNeir, 178 Va. 285, 16 S. E. (2d) 632. These do support in general the contention that under the circumstances of this case the complainant ought not to be heard to challenge the validity of the Arkansas decree. Others more or less to the same general effect will be found in the annotations hereinabove referred to.

It is thus apparent, as has already been stated, that there is a decided conflict of authority on the question in hand. It has been truly said that no law can settle all of the vexatious problems arising out of divorce. Within the limits of its proper function, the most that a court can do is to adopt the view which will best promote the declared public policy of the state. This was indicated more than thirty years ago in the case of Toncray v. Toncray, 123 Tenn. 476, 131 S. W. 977, 981, 34 L. R. A., N. S., 1106, Ann. Cas. 1912C, 284, when our Supreme Court was confronted with the perplexities which it foresaw would result from the now repudiated, but then recent, decision in Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1. There, Mr. Justice Green, later Chief Justice, writing for the court, said:

"The Supreme Court of the United States is the ultimate expounder of the federal Constitution, and, so long as Haddock v. Haddock stands, each of the states is entitled to give to such decrees as the one here under consideration just that degree of efficacy, within its borders

as to its citizens, which its courts may determine to be the state's proper policy.

"We think the policy of the chancellor's decree is the true one—the policy most consistent with justice, good morals and comity—and we adopt it as the course hence forth to be taken by the courts of this state."

The court was not there dealing with the question we have, but the foregoing observation, we think, is a guide to the choice which must be made between the conflicting views.

It has often been said that the State is a party to all actions brought to dissolve the marital relation,[3] and, in the sense contemplated, this is undoubtedly true everywhere. It results from the interest every governmental entity has in this most fundamental status of its citizens. It is also said that the concern of the State is to uphold the permanency of the marital relation. As to this, we think it can be said unqualifiedly only of a State where there is no provision for divorce, or it is forbidden absolutely. Where, as here, the law provides for the dissolution of a marriage on certain specified grounds, it can hardly be true that the State, as a matter of public policy, is profoundly concerned in maintaining a marital relation where there can be no doubt about the existence of grounds for divorce, at least where there is little or

---

[3] This view finds recognition in the act creating the office of Divorce Proctor for Shelby County, and defining his duties. By the terms of the statute, the Proctor's services are required in every divorce case tried in that County "to the end that justice may be done the parties and that society may be protected and the sanctity of the marriage relation preserved". Acts of 1915, Ch. 121. By the amendatory act of 1945, Ch. 109, the Proctor is authorized to take the steps necessary to have an appellate review of decrees in divorce cases where, in his opinion, "the general Welfare justifies and warrants."

no possibility of forgiveness and reconciliation. Cf Lingner v. Lingner, 165 Tenn. 525, 56 S. W. (2d) 749.

We think it perhaps more accurate to say, at least in this jurisdiction, that as a matter of public policy the State is interested in the marital status of its domiciliaries; in preserving that status where it can be done consistently with our divorce laws, and where that cannot be done, in releasing the parties from its restraints where the aggrieved and innocent spouse asserts his or her rights to some form of the relief provided by pertinent statutory provisions and furnishes the contemplated proof. Cf. Lingner v. Lingner, supra. Marriage of its citizens and propagation of the race within wedlock must ever be of vital interest to the sovereign. A point sometimes apparently overlooked is that whatever the view of some ecclesiastical authorities, the law places no stigma on a divorced person. It is still interested in his matrimonial status, actual and potential. Subject to any obligations remaining from the marital relation, it deprives him of no rights accorded a single person with the exception that a defendant in a divorce proceeding who has been guilty of adultery shall not marry the person with whom the act was committed during the lifetime of the former husband or wife. Save in that case no new restrictions are placed on the right to marry again. Upon the contrary, our statute affirmatively declares that right. Code, Sec. 8452. Indeed, it is not too much to say that society is concerned that he do so for the same reason that it was interested in his other venture or ventures in matrimony. If it does not actively promote that end, it does nothing to discourage it. Whatever may be thought elsewhere or by other authorities, the law in this jurisdiction recognizing the realities of human nature, believes this

policy promotes good morals and makes for the good of society. Cf. Lingner v. Lingner, supra.

 A number of cases turn upon the fact that the position of the party assailing the divorce decree is inconsistent with his or her position in the proceeding wherein that decree was rendered. The rule denying the right of a litigant to assume inconsistent positions in the course of legal proceedings where no reasonable explanation of the inconsistency is offered, prevails in this jurisdiction, and this is true apart from what we know as estoppel by oath. It is regarded as essential to the orderly administration of justice. But here, apart from whether this rule would prevail over considerations involving public policy, the complainant takes no inconsistent position, at least in so far as the object of his suit is concerned. He seeks the same relief, basing his claim on the same grounds as he did in the Arkansas proceeding. This appears to have been regarded elsewhere as a consideration of some importance. See Shannon v. Shannon, 247 App. Div. 790, 286 N. Y. S. 27.

 But of more significance in a determinative sense is the fact that so far as appears, no property rights are involved, and no one has altered his or her position on the strength of the Arkansas decree. If we look through the form to the substance, the truth seems to be that what the complainant seeks, is a clarification of his marital status. As already indicated, we think that is something in which the State is interested as a matter of public policy. An eminent authority has expressed it in this language: ''It is essential to the peace of society that questions of this kind should not be left doubtful but that the domestic relations of every member of the community should be clearly defined and conclusively settled and at rest.'' 1 Greenleaf on Evidence, Sec. 525, Vol. I.

If we should hold the complainant estopped to prosecute the present action because it necessarily involves a challenge to the validity of the Arkansas decree, it would be to say not that that decree was a binding adjudication which dissolved his marital bonds, but only that (to put it in the strongest light) by reason of his participation in the fraud on the Arkansas court, he will not be allowed to prove against the recitals of the decree, the truth with respect to the jurisdictional prerequisites. Hence the parties would be set at large, in the midst of a grave uncertainty as to the most important status known to society. Neither would know whether he or she could safely remarry, for in such a case in addition to other obvious considerations of importance, any estoppel that would arise would not prevent a state's prosecuting for bigamy or for unlawful cohabitation the party obtaining the invalid divorce. Restatement, Conflict of Laws, Sec. 112, Comment B; Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366.

Upon the facts found by the chancellor we are not convinced that to leave the complainant in that plight, to say nothing of the effect upon the situation of the other spouse, would be to promote good morals or any other interest of society.

Now, of course, fraud is odious and it is particularly so when it appears in the administration of justice. But the question here is, whether it is more important to penalize the guilty party by denying him access to the court to obtain relief formally recognized as legitimate by the public policy of the State, than it is to promote the interest which the State has in eliminating the doubt about his marital status. We think that under the facts of this case this question is to be answered in favor of the latter alternative. It is sometimes the case

that in the promotion of public policy a wrongdoer receives an incidental advantage which otherwise he would not be allowed. In such cases, since the sovereign, though a party in interest, is not actually a party of record, public welfare must be served through a private litigant even though in doing so there is bestowed upon the latter an unmerited benefit. Palmer Bros. v. Havens, Tenn. App., 193 S. W. (2d) 91, and cases cited. Thus, with respect to transactions where the parties are in pari delicto, it is said by way of a limitation on the general rule that "whenever public policy is considered as advanced by allowing either party to sue for relief against the transaction, the relief is given to him." Pomeroy's Eq. Jur., Vol. 2, Sec. 941. See also, 30 C. J. S., Equity, Sec. 98, p. 490; Gibson's Suits in Chy., Sec. 42.

 The rigid application of the doctrine invoked by the Proctor would menace public policy from another standpoint. There is no more important facet of our divorce laws than the prohibition against collusive proceedings. It seems to us that to adopt an inflexible doctrine of estoppel in a case of this kind would be to approve a principle which would facilitate the circumvention of this safeguard. Cf. Andrews v. Andrews, 188 U. S. 14, 15, 23 S. Ct. 237, 47 L. Ed. 366. This is an important consideration, for it is common knowledge that much of the abuse of the divorce laws comes about through collusion. Indeed, in many instances the court proceeding is a mere formality which in reality amounts to no more than a ratification of an agreement of the parties. Actually, while decrying the principle, we have gone a considerable distance on the road to the utterly obnoxious practice of divorce by consent. See observations in "Standish" v. "Standish," 179 Misc. 564, 40 N. Y. S. (2d) 538. We think no rule should be adopted which, however little in-

146

tended, would in actual practice promote that end, directly or indirectly.

■ Again, it is well established in this state that jurisdiction of the subject matter cannot be conferred by waiver or consent and that a judgment or decree rendered in the absence of such jurisdiction is not merely voidable but absolutely void.[4] Sheffy v. Mitchell, 142 Tenn. 48, 215 S. W. 403; Petition of Southern Lmbr. & Mfg. Co., 141 Tenn. 325, 210 S. W. 639; Chambers v. Sanford & Treadway, 154 Tenn. 134, 289 S. W. 533; Barthell v. Zachman, 162 Tenn. 336, 36 S. W. (2d) 886; Agee v. Dement, 20 Tenn. 332; Kentucky-Tennessee Light & Power Co. v. Dunlap, 181 Tenn. 105, 113, 178 S. W. (2d) 636.

---

[4]As applied to domestic judgments of a court of general jurisdiction proceeding according to the course of common law and equity courts, the terms "void" and "voidable" do not import a difference in the effect of the invalidating factors, but a difference in how these must be made to appear and the nature of the proceeding by which the judgment is brought under attack. If the judgment roll or record proper affirmatively show a want of jurisdiction, either of the person or subject matter, the judgment is not merely voidable but is void, binds no one and yields to attack from any angle. But in the absence of such a showing, the judgment, though in fact rendered without the requisite jurisdiction, is not in legal effect void but is said to be voidable only in the sense that it can be successfully attacked only by a direct proceeding for that purpose, as by an appeal or writ of error or by an independent bill for equitable relief, wherein, in either case, the court may look to evidence **dehors** the record proper to determine whether the court rendering the challenged judgment had the necessary jurisdiction. Gibson's Suits in Chy., Sec. 446.

But, as pointed out in Note 1, ante p. 133, judgments of a sister or foreign State are an exception to the general rule confining the inquiry upon collateral attack for lack of jurisdictional prerequisite to the judgment roll or record proper. Freeman on Judgments, Vol. 1, Sec. 375a; Vol. 3, Secs. 1366, 1371, 1436; 50 C. J. S., Judgments, Sec. 893, p. 502 et seq.

To hold that an estoppel arises under the facts of the present case, it seems to us would counter the principle of this salutary rule without adequate compensating advantage.

The challenged judgment being not one of a domestic court of general jurisdiction, but a judgment of a court of a sister State, the fact that the lack of jurisdiction is not apparent from the face of the record proper but is made to appear only by the evidence, does not affect the principle. See 50 C. J. S., Judgments, Sec. 893, p. 502 et seq.

So, after much reflection we have come to the conclusion that under the particular facts of this case the rule urged upon us by able counsel for complainant is the one best calculated to promote the public policy of this jurisdiction. It is well stated in the case of Hollingshead v. Hollingshead, 91 N. J. Eq. 261, 110 A. 19, 24. In that case, by way of defense to the complainant's bill for maintenance, the defendant denied that he was the complainant's husband, alleging that the complainant had theretofore obtained a divorce from him in Nevada. The complainant then challenged the validity of the divorce decree on the ground that she was induced by the defendant to go to Nevada and institute the suit; that she had no bona fide domicile in that State, and hence the decree was void because the Nevada court had no jurisdiction of the subject matter. By way of reply, the defendant asserted that the complainant was estopped to challenge the validity of the decree by reason of having procured it. The question was thus squarely presented and the opinion makes clear that it was exhaustively considered. After examining the precedents and demonstrating the large extent to which the question is enterwoven with the public policy of his State, the learned vice-chancellor, upon

reason and authority, reached the following conclusion: "The true rule, then, would seem to be that, where a suitor comes into equity and asks for relief, notwithstanding a foreign decree of divorce, which if valid, would be a bar to his or her suit, which decree is void for lack of jurisdiction, but which was obtained by the present complainant, equity will examine into all the facts, and will accord or refuse its aid upon general equitable principles, according to whether or not it deems it conscionable so to do.''

The vice-chancellor then enumerates some of the facts and circumstances which should be regarded as material factors in determining whether the relief should be granted. We may add that in applying the rule in this jurisdiction we think the public policy of the State should always be considered.

The foregoing rule was apparently adopted and applied in the present case by the learned chancellor, and for his judgment we have much respect. Since the evidence was not preserved by a bill of exceptions, it must be conclusively presumed that there was nothing shown which would render it unconscionable to grant the relief sought. Under the state of facts alleged in the bill and found by the chancellor, we cannot believe that the declared public policy of this State would be served by keeping these parties bound by the bonds of matrimony for no purpose other than to penalize the complainant for his imposition, however reprehensible, on the Arkansas court. We think it more important to serve the interest of the State in the marital status of one of its domiciliaries, and under the facts found we think this is what the chancellor's decree does.

It may be well to take note of one other matter. We have discussed the principal question in this case largely from a standpoint of estoppel because that

is the way it has been presented in the briefs. However, as it arises upon the record, we think it could be very well argued that apart from any question of fraud, one aspect of the Proctor's position is based upon the allied doctrine of merger or former recovery. This is, in general, that no further action can be prosecuted between the same parties upon a matter already ripened into judgment. Though it may be examined to aid in interpreting the judgment, the cause of action can never again become the basis of a suit between the same parties.

But merger depends for its existence upon a valid judgment. A judgment which is wholly void is in legal effect no judgment at all and cannot operate as a merger, since it is subject to collateral impeachment at any time. Freeman on Judgments, Vol. 2, Section 556. Thus, the author of that distinguished text says that, "If, in support of a plea of judgment recovered, the defendant introduces the proceedings or record of a court from which it appears that the plaintiff has taken a judgment which is coram non judice, such judgment will be as unavailing as a defense for the defendant as it would be as a cause of action for the plaintiff". "In such a case", says the author, "it is obvious that the judgment produced is in fact no final determination of the rights of the parties, and that no obstacle has intervened to prevent them from seeking such determination." Id., Vol. 2, Sec. 555. This is also the view of our own court. McCadden v. Slauson, 96 Tenn. 586, 36 S. W. 378; Smith v. Wallace, 12 Tenn. 572, 575.

It may be said also that with reference to the defense of res judicata set up by the Divorce Proctor that a judgment rendered without jurisdiction of subject matter being a nullity cannot operate as res judicata. Freeman on Judgments, Vol. 2, Sec. 642.

While the rule adopted will not solve all the problems arising from the divorce law, no more than will any rule, yet we believe its flexibility makes it the most practicable one by which to work out the public policy of this jurisdiction, in this most vexatious and important class of cases. In adopting it we have had in mind, of course, the limitations upon the functions of courts. As was said long ago by an eminent jurist: ''Their general duty is not to change, but to work out, the principles already sanctioned by the practice of the past. No one supposes that a judge is at liberty to decide with sole reference even to his strongest convictions of policy and right. His duty in general is to develop the principles which he finds, with such consistency as he may be able to attain.'' Holmes, C. J., in Stack v. New York, etc., R. Co., 177 Mass. 155, 158, 58 N. E. 686, 687, 52 L. R. A. 328, 83 Am. St. Rep. 269.

Before concluding this opinion, we think it meet that we express our indebtedness to counsel for the able and exhaustive briefs furnished us. They have served no little to lighten our labors.

The result is that the decree is affirmed. The cost will be paid by the complainant.