EFFIE T. LINGNER, COMPLAINANT, APPELLEE, *v.* W. H.
LINGNER, DEFENDANT, APPELLANT.

(*Nashville,* December Term, 1932.)

Opinion filed February 11, 1933.

JEFF McCARN, for complainant, appellee.

SETH WALKER, GEORGE ARMISTEAD and WM. HUME, for defendant, appellant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

In this case the wife filed her bill seeking a divorce from bed and board on the ground (1) of cruel and inhuman conduct and (2) abandonment and failure to provide for her. The husband filed an answer denying the charges of the bill and by way of cross bill sought a divorce himself on the ground of cruel and inhuman conduct. Considerable proof was heard and the chancellor dismissed the cross-bill, dismissed the bill insofar as it charged cruel and inhuman conduct, but sustained the bill upon the charge of abandonment and failure to provide.

In disposing of the case, among other things, the chancellor said:

"I have seen the complainant on the stand. I have seen the defendant on the stand. I have observed their manner and demeanor as only a trial court can. I have seen the children of the complainant on the stand. I have seen the sisters of the defendant, worthy and good women, and these good children on the stand. It is perfectly apparent to me that no reconciliation can, and will ever, take place between these people. . . . It must be apparent to everybody that observed the demeanor of these people on the stand that wounds have been opened

and that it would not be in the interest of society and the marital relation, but a travesty, to grant the kind of divorce prayed in this bill. It would only prolong the situation that now ought to be stopped, and I have concluded that under the authority of Sections 4202, 4205 and 4220 of the Code (Shannon's) as construed in the case of *Hackney* v. *Hackney,* 9 Humph., 28 Tenn., on pages 452-3, to end this marital relation. It ought to be ended and I am going to grant an absolute divorce on the ground of abandonment and failure to provide to this woman under this bill, under her prayer for general relief.''

By a petition to rehear the case of *Merritt* v. *Merritt,* 10 Tenn. App., 369, was called to the attention of the chancellor. In that case the Court of Appeals held that an absolute divorce could not be granted upon a bill or cross bill in which a divorce from bed and board only was sought. Feeling constrained by this authority, the chancellor modified his former decree so as to grant to the wife a divorce from bed and board, made allowance of attorney's fees, and referred the cause to the Master for a report as to the extent of the husband's property, so that a suitable order for support might be made.

The husband appealed and in the Court of Appeals assigned error to the action of the chancellor in dismissing his cross-bill and in decreeing a limited divorce instead of dissolving the bonds of matrimony.

The Court of Appeals concurred in the finding of the chancellor that charges of cruel and inhuman conduct were not sustained against either party. It also concurred in the chancellor's finding that the husband had abandoned the wife and failed to provide for her. Likewise it thought the decision in *Merritt* v. *Merritt, supra,*

was controlling and approved the chancellor's decree awarding to the wife a divorce from bed and board only. The finding of the chancellor to the effect that no reconciliation between the parties was possible and that it was not in the interest of society to preserve the marriage status between the parties under such circumstances was not adverted to by the Court of Appeals. This latter conclusion of the chancellor was not challenged, however, by either party in this court, and if it were, the record fully sustains it.

Upon re-examination of *Merritt* v. *Merritt, supra,* the Court of Appeals expressed itself as being satisfied with the result therein reached and indicated a disposition to adhere to the ruling in that case for the further reason that a petition for *ceriorari* therein had been denied by this court, pointing out an expression of this court in *Beard* v. *Beard,* 158 Tenn., 437, that the denial by us of the writ of *certiorari,* "without a written opinion or some explanatory memorandum" tended to show the approval by this court of the reasoning of the Court of Appeals in a given case. The quoted expression of this court was merely intended to state the views of the case ordinarily entertained by this court when a petition for *certiorari* to the Court of Appeals is denied. Many petitions for *certiorari,* however, are denied because statutory prerequisites to their consideration are overlooked by counsel and moreover this court has not felt itself required in every instance to file a memorandum upon denial of the writ, although we only concurred in the result reached by the Court of Appeals. *Beard* v. *Beard,* therefore is not to be taken as announcing an invariable rule in this particular. At any rate, if upon re-examination we become dissatisfied

with an opinion of the Court of Appeals which we approved, and a mere matter of practice is involved, we no more hesitate to investigate again the question decided than we would hesitate so to do in a like case disposed of by us on direct appeal.

In *Merritt* v. *Merritt, supra,* the Court of Appeals said:

"The rule is that no relief will be granted inconsistent with that prayed for. The decree ordinarily follows the special relief sought by the bill, if the pleadings and proof will warrant it. The relief under the general prayer must be such as follows, ordinarily and logically, from the pleadings and proof. Gibson's Suits in Chancery (2 Ed.), sec. 557. An absolute divorce is, of course, very inconsistent with a divorce from bed and board. In suits for divorce, as well as suits in equity in general, all orders and decrees must be justified by the pleadings as well as by the proofs."

▆▆▆▆ Marriage is a status regulated by law. Prescribed formalities are necessary to the creation of this status. Prescribed procedure is necessary to its dissolution. Although a divorce suit is in the nature of a suit in equity, *Broch* v. *Broch,* 164 Tenn., 219, nevertheless a divorce suit is *sui generis.* The procedure is largely controlled by statute. Pleading and practice in divorce cases, as governed by statute, differ in many particulars from pleading and practice in equity cases generally.

"But in divorce cases, by our local legislation, the observance of forms is, in a great degree, dispensed with, and, in this respect, such cases stand upon grounds peculiar to themselves, and do not fall within the ordinary rules governing chancery proceedings." *Hackney* v. *Hackney,* 28 Tenn. (9 Humph.), 450.

Section 8427 of the Code provides that it shall be a cause of divorce from bed and board, or from the bonds of matrimony, in the discretion of the court, "That he has abandoned her, or turned her out of doors, and refused or neglected to provide for her." Section 8444 of the Code provides that "If the cause assigned for a divorce be any of those specified in section 8427, the defendant may make defense by alleging and proving the ill conduct of the complainant as a justifiable cause for the conduct complained of, etc., etc."

Section 8445 of the Code is as follows:

"But if the court be of the opinion that the complainant is entitled to relief, it may be granted, according to the prayer of the bill, by annulling the marriage, or by ordering a separation, perpetual or temporary, or such other decree as the nature and circumstances of the case require."

The argument for the wife herein is that the clause "according to the prayer of the bill" in the above section qualifies all that follows. That although the court is authorized to annul the marriage, or order a separation, or to render such other decree as the circumstances require, none of these things can be done except "according to the prayer of the bill."

This construction, although plausible, seems to rob the final clause of the section of any force whatever. There could have been no point in empowering the court to render "such other decree as the nature and circumstances of the case require" if the relief which the court might grant was intended to be limited by the prayer of the bill. If such had been the legislative intent, the final clause of the section would have been omitted. The section would have read that in a case where com-

plainant is entitled to relief, it might be granted by annulling the marriage, or by ordering a separation, according to the prayer of the bill.

It seems to us that the concluding clause of this section presents a distinct alternative. That the section should be read that relief in the alternative may be granted (1) according to the prayer of the bill, by annulling the marriage, or by ordering a separation, perpetual or temporary, or (2) such other decree as the nature and circumstances of the case require. No other interpretation of the statute will give any effect to the last clause and it is the duty of the court in construing a statute or written instrument, if possible, to give effect to all the language used.

Insofar as a bill seeks a divorce, it can pray for but one of two things—a limited divorce or an absolute divorce. Upon that aspect of a bill the court can grant but one of two things—a limited divorce or an absolute divorce. Since but one of two things can be done, and the court is authorized to do the thing that the circumstances of the case require, the statute must mean that the court can do either thing, whether "according to the prayer of the bill," or not. Such conclusion follows, unless the bill pray for one kind of divorce and in the alternative for the other kind, in which case the granting of either kind of divorce would be "according to the prayer of the bill."

We agree with the chancellor that *Hackney* v. *Hackney, supra,* fully sustained his first decree. In that case the bill prayed for a divorce from bed and board. After argument the chancellor permitted an amendment of the prayer so as to seek an absolute divorce. An absolute divorce was thereupon granted. This court af-

firmed the decree. It is true this court held the amendment was properly allowed but our statutes regulating divorce procedure were reviewed and the court said:

"Under these acts it would not be a sufficient ground for reversal, however informal the proceeding, that, upon a specific prayer for a divorce *a mensa et thoro,* a decree for a divorce *a vinculo matrimonii* had been pronounced."

We do not agree that this expression was *dictum.* We think the decree of the chancellor was affirmed upon two grounds. That the amendment was properly allowed and, furthermore, that the decree below would have been justified without the amendment. That this construction of the opinion is proper is rendered most certain by the explanation of the court, heretofore quoted, that divorce cases "stand upon grounds peculiar to themselves, and do not fall within the ordinary rules governing chancery procedure."

We are referred to *Rutledge* v. *Rutledge,* 37 Tenn. (5 Sneed), 555, and other cases to the effect that the policy of the law is to discourage the incautious granting of divorces of any kind and that in all doubtful cases the court should grant a divorce from bed and board only rather than destroy the vinculum of the marriage altogether.

The idea underlying all these cases is that a reconciliation between the parties may be accomplished by separating them for a limited time and permitting their passions to subside. In the case before us, however, the parties are mature. The chancellor, who had these people before him, together with their kinsfolk, has found that their mutual feelings have reached such a degree of hostility as to make a reconciliation impossible; that

a limited divorce would only prolong a bad situation that society had no interest in preserving. We agree with the chancellor. This is not a doubtful case such as *Rutledge* v. *Rutledge, supra,* and those that follow it. The wishes of neither party in a divorce case control the actions of the court. The court, of course, gravely considers the desires of the party wronged but the court reserves the right to determine for itself what is best for that party. We can see no good that would accrue to either party herein by decreeing a limited divorce since no rapprochement can be expected.

As pointed out by another court, we must take into consideration "the mischiefs arising from turning out into the world, in enforced celibacy, persons who are neither married nor unmarried." *Burlage* v. *Burlage,* 65 Mich., 624, 32 N. W., 866. Society is not interested in perpetuating a status out of which no good can come and from which harm may result.

Upon the whole case we think the first disposition of the matter made by the chancellor was proper. That an absolute divorce should be decreed to the wife. *Merritt* v. *Merritt, supra,* may be regarded as disapproved. ▆ An application is made to this court to fix additional attorney's fees for counsel of the wife. An allowance of $175 has already been made and we prefer that the chancellor, more familiar with the services rendered by counsel and the scale of fees prevailing at the Nashville Bar, fix the additional fee upon the remand. Moreover the chancellor will at that time have before him a report as to the property of the husband and the amount of the fee will naturally be governed to some extent by the amount of the alimony allowed.

The cause is remanded to the Chancery Court of David-

son County for the execution of a reference similar to the one previously directed by the chancellor in order to permit him to determine alimony, etc. Upon the remand the wife will be permitted to amend her bill so as to set up her claim for homestead. The allowance of $75 per month to the wife will be continued until the final disposition of the case by the chancellor. The costs of appeal will be taxed to the defendant Lingner and the sureties on his appeal bond.