## SANDERS v. ALTMEYER et al.
### Civil Action No. 613.

District Court, W. D. Tennessee, W. D.
Nov. 21, 1944.

Charles L. Glascock, of Memphis, Tenn., for plaintiff.

William McClanahan, U. S. Atty., and Garland Draper, Asst. U. S. Atty., both of Memphis, Tenn., and Robert B. Hannings, of Washington, D. C., for defendants.

BOYD, District Judge.

This is a proceeding under the Social Security Act, 42 U.S.C.A. § 301 et seq., for compensation which plaintiff, Maggie Lee Sanders, contends is due her by reason of the death of one Walter Sanders.

The defendant, Social Security Board, has previously reached the conclusion that plaintiff is not entitled to the benefits un-

der the Act, and a certified transcript of the record is before this Court for review.

Walter Sanders, the wage earner, and one Lelia Harris lived together and cohabited from May 1930, to November 1940, under conditions which made them common law man and wife, as that relationship is generally understood. On the latter date, they parted and went their separate ways, and on May 24, 1941, Walter Sanders entered into a ceremonial marriage with the plaintiff, complying with the marriage laws of the State of Tennessee. Later, in September, 1942 plaintiff and decedent separated, but were not divorced when the latter died on the 10th day of February, 1943, in Memphis, Tennessee. Sanders left no children by either wife. He made no mention of either Lelia Harris or plaintiff in his will. Plaintiff dissented from decedent's will, and the Probate Court of Shelby County, Tennessee, in appropriate proceedings, set aside to her certain exemptions under the Tennessee law, as surviving widow. Lelia Harris was a witness in that proceeding and testified at the time that she had been decedent's common law wife, but made no claim to his property as surviving widow.

Lelia Harris made application to defendants as Walter Sanders' common law wife for certain death benefits under the Act, and a settlement was made with her. Plaintiff now contends she, rather than Lelia Harris, is the surviving widow of the insured, Walter Sanders, and as such that she is entitled to the benefits under the Act. Sections 209(j) and 209(m) of Title II of the Social Security Act, 42 U.S.C.A. § 409(j, m), read as follows:

"(j) The term 'widow' (except when used in section 202(g) means the surviving wife of an individual who either (1) is the mother of such individual's son or daughter, or (2) was married to him prior to the beginning of the twelfth month before the month in which he died."

"(m) In determining whether an applicant is the wife, widow, child, or parent of a fully insured or currently insured individual for purposes of this title, the Board shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking *intestate personal property as a wife,* widow, child, or parent shall be deemed such."

■ It will be observed in determining the plaintiff's status, that is, whether she is the surviving widow under the foregoing section, that the state laws of devolution relating to personal property in the state where the insured individual was domiciled when he died, are controlling. In other words, the question for decision here is whether the plaintiff or Lelia Harris would be entitled to the benefits of the Social Security Act under the Tennessee statutes of descent and distribution.

The code section, Sec. 8389, Williams' Tennessee Code, Annotated, 1934, regulating the distribution of personal property of one who dies intestate in the State of Tennessee, is as follows:

"The personal estate as to which any person dies intestate, after the payment of the debts and charges against the estate, shall be distributed as follows:

"(1) To the husband or wife and children, or the descendants of children representing them equally, the husband or wife taking a child's share.

"(2) To the husband or wife altogether, if there are no children nor the descendants of children.

"(3) To the children, or their descendants, in equal parts, if there is no husband or wife, the descendants taking, in equal parts, the shares of their deceased parents."

In denying plaintiff's claim to compensation, the Board took the view that inasmuch as decedent, Walter Sanders, had lived with Lelia Harris over a period of years, holding her out as his wife, there was created under the laws of Tennessee a marriage between them, which, being undissolved, made decedent Walter Sanders incapable of entering into a valid marriage with plaintiff. More particularly, it is defendants' position there was created a "marriage by estoppel" having the civil effects and legal incidents of a lawful marriage under the laws of Tennessee which entitle Lelia Harris to the rights of a surviving widow to the exclusion of the plaintiff.

It is important to decide whether the word "wife" in the Tennessee statute supra means common law wife (widow) or lawfully wedded wife (widow).

█ Since common law marriages are not recognized in Tennessee (Bashaw v. State, 1 Yerg. 177; Smith v. North Memphis Savings Bank, 115 Tenn. 12, 89 S.W. 392) and are illegal and void, the term "wife" used in the Tennessee statute could refer only to one who is a lawfully wedded wife, or one who has married in accordance with the state's statutory requirements.

It is significant here in construing the Tennessee statute as to the sense in which the word "wife" is used to note that under Sections 8391, 8392 and 8393, special provisions are made concerning illegitimates and personal property descending and distributed to them. The fact that separate statutes have been enacted on the subject of illegitimates seems to exclude the idea that common law wives or widows might be intended as those who would take personalty under the Tennessee statutes of descent and distribution under consideration here. The Tennessee Supreme Court in Lingner v. Lingner, 165 Tenn. 525, 56 S.W.2d 749, said:

"Marriage is a status regulated by law, created only by prescribed formalities and dissolved only by prescribed procedure."

There would be no point in a further discussion of the matter since, as stated by the Referee in his opinion, the determining question is whether common law marriages are recognized in the State of Tennessee.

█ But defendants contend this is a proper case for application of the doctrine of estoppel, which for civil purposes is sometimes recognized under Tennessee law where one's marital status is brought into question. Some of the cases relied on by the defendants which apply this doctrine are as follows: Johnson v. Johnson, 1 Cold. 626, 41 Tenn. 626; Smith v. North Memphis Savings Bank, supra; Summers v. Tennessee Eastman Corporation, 169 Tenn. 335, 87 S.W.2d 1005; Bohlen-Huse Coal & Ice Co. v. McDaniel, 148 Tenn. 628, 257 S.W. 848; Allen v. Allen, 8 Tenn.App. 48.

These cases, while they were correctly decided, are not applicable under the undisputed facts of the case at bar. For the most part, they are cases arising under the Tennessee Workmen's Compensation Law, which was enacted for the purpose of relieving society and placing on industry the burden of caring for and ministering to injured employees, the controlling consideration being dependency rather than relationship. Bohlen-Huse Coal & Ice Co. v. McDaniel, supra; Kinnard v. Tennessee Chemical Co., 157 Tenn. 206, 7 S.W.2d 807; Summers v. Eastman Corp., supra.

Common law marriages were recognized in some of these cases under their peculiar facts and under the doctrine of estoppel in order that the purpose of the compensation law would not be defeated, especially where the marital status of the parties was incidental to the main question and was not directly involved in a contest between heirs over the property. Rogers v. Park's Lessees, 4 Humph. 480; Bohlen-Huse Coal & Ice Co. v. McDaniel, supra.

It will be noted that estoppel was applied in those cases where the parties were living together as man and wife until the death of one of the parties, or where the family integrity was involved. These important facts are not present in the case at bar. Deceased had not lived with his former common law wife for approximately two and one-half years, had no children, and had repudiated his common law wife through their separation and his subsequent marriage to the plaintiff.

█ Searching court records, as was done in this case, to ascertain if Lelia Harris and the wage earner had been divorced, to rebut the presumption that a divorce was obtained from Lelia Harris before he contracted his marriage with the plaintiff (Gamble v. Rucker, 124 Tenn. 415, 137 S.W. 499; Duggan v. Ogle et al., 25 Tenn. App. 467, 159 S.W.2d 834), was useless procedure. Since common law marriages are illegal and void in the State of Tennessee, and a divorce on this account is unnecessary, a presumption never obtained that a divorce had been granted.

In Payne v. Payne, 142 Tenn. 320, 219 S.W. 4, 7, a case where the contestants each claimed to be the lawful widow, there is found a very interesting discussion of the subject of presumptions. Under the facts in that case, the Court held there was no estoppel between the parties. There the Court said:

"Presumption is indulged to promote the things in which the public has an interest, and is not indulged on behalf of the parties themselves."

To require one to obtain a divorce in the courts of Tennessee from a person with whom he had previously lived in the relationship of common law man and wife before entering into a ceremonial marriage under the state statutes, would create an anomalous and absurd condition in Tennessee law. There could be no reason for one to obtain a divorce on a null and void contract of marriage. There is no provision in the Tennessee law for the dissolution of such a marriage. Certainly there would be such provision if common law marriages were intended to be given the recognition here contended for. Conceivably, many women with whom a man had lived during his lifetime might claim benefits and rights as his wife (widow) at his death. The way would be open for many abuses, and much confusion and mischief in the administration of estates in Tennessee would result if the laws were so construed.

Again, one marrying, as decedent here married the plaintiff, could be held to have committed bigamy if recognition should be given to a common law marriage. While the Tennessee Supreme Court in Hale v. State, 179 Tenn. 201, 164 S.W.2d 822, held marriage by estoppel valid for purposes of criminal prosecution on a non-support charge, the doctrine is not recognized where the charge is bigamy or criminal conversation. Kinnard v. Tennessee Chemical Co., supra, and cases cited therein.

Unmarried people living together in Tennessee openly and notoriously may be prosecuted under the common law for lewdness.

The Court said in the old case of Smith v. Smith, 1 Tex. 621, 46 Am.Dec. 121:

"Whatever force may be given to evidence of cohabitation and repute, as establishing a domestic marriage in countries governed by the common law, yet, we cannot permit the establishment of a foreign marriage on such evidence in our courts, in cases where it would operate to the annulling of a marriage, celebrated here according to the laws of the country, and to the destruction of all the rights of the innocent partner and the offspring of the latter marriage."

In Schneider v. Schneider, 183 Cal. 335, 191 P. 533, 534, 11 A.L.R. 1386, the Court said:

"A void marriage confers no rights upon either of the parties to it in respect to the property of the other such as would be conferred by a valid marriage."

■ Since a presumption that a divorce had been granted dissolving a common law marriage is not indulged, it cannot be said this is a proper case for application of the doctrine of estoppel. There is no inconsistency or fraud shown here which could result in an injustice to Lelia Harris or anyone else, and it follows that the plaintiff is not barred from asserting the fact that there was no legal marriage between the deceased wage earner and Lelia Harris. Too, the plaintiff does not here stand in privity with the deceased wage earner. Smith v. North Memphis Savings Bank, supra. It is important to state also there is no proof before the Court that plaintiff even knew of the common law marriage between Walter Sanders and Lelia Harris.

It results that there is no basis for support of the defendants' contentions. The plaintiff's rights under Tennessee law relating to descent and distribution arising out of her lawful marital relationship are superior to any that might be asserted by a common law spouse. There was nothing to prevent a lawful marriage between plaintiff and decedent Walter Sanders, and plaintiff clearly is the wife (widow) intended under the Tennessee statute who is entitled to the wage earner's intestate personal property.

The case presents only a question of law as to whether the defendant Board applied such law as would be applied in determining the devolution of intestates' personal property by the courts of Tennessee. The Court recognizes the Board's special competence in this field, but is obliged to rule as a matter of law it did not, in declining plaintiff's claim, apply the law as would be applied by the courts of Tennessee, and the plaintiff is entitled to have her cross-motion for summary judgment sustained, the Board's decision reversed, and the case remanded for appropriate action in accordance with this opinion.