Mrs. Bessie Perrin

*v.*

R. C. Perrin.

(*Jackson,* April Term, 1956.)

Opinion filed February 8, 1957.

Grover N. McCormick, Memphis, for petitioner.

Jack Norman, Nashville, for respondent.

Mr. Chief Justice Neil delivered the opinion of the Court.

This suit had its origin in the Chancery Court of Shelby County by a bill of Mrs. Bessie Perrin wherein she alleged that the defendant had "abandoned her and turned her out of doors and refused and neglected to provide for her". The prayer of the bill was for "separate maintenance and support" and for general relief. The defendant filed an answer denying all material allegations of the bill, and, by cross bill, alleged many aggravating incidents on the part of the complainant and

prayed for a divorce on the ground of cruel and inhuman treatment. Complainant filed an answer denying every charge in the cross bill.

The cause was heard by Hon. John E. Swepston, who was at that time Chancellor. He dismissed the cross bill without prejudice and sustained the complainant's suit for separate maintenance, awarding her $75 per month "until further orders of the court". She was permitted to occupy the residence which was owned by her and Mr. Perrin as tenants in common. The defendant appealed to the Court of Appeals; that court affirmed the Chancellor and remanded the cause for further proceedings.

Since the filing of the original bill 22 years ago the complainant has been paid the $75 per month as provided by the original decree with the exception of approximately two months when he was in arrears in the amount of $137.50. This sum, however, was later satisfied. During this long period of time the parties have litigated their differences, the defendant seeking an absolute divorce, while the complainant insisted upon the *status quo*.

The defendant contended that the complainant constantly refused to be reconciled and would not compose their differences. The complainant has insisted without equivocation that the defendant left her without cause; that she opposed a divorce and would welcome his return to her.

On April 27, 1943, the defendant filed a petition in the original cause, "No. 40787", in which he recited all prior proceedings. It was headed, or entitled, "Petition of Defendant to Make Divorce Absolute". It charged that

he and Mrs. Perrin had been separated for more than eight years, during which time "they had rarely seen each other" and had not lived together as man and wife, and there was no chance of a reconciliation. It was his contention that Mrs. Perrin's suit for separate support and maintenance should be sustained as a suit for an absolute divorce. The petition prayed for subpoena to issue and answer thereto and that complainant (Mrs. Perrin) be given an absolute divorce. In answering this petition cross-petitioner makes the following contention:

"She would further show to the Court this petition should be dismissed for the further reason that the pleadings in this cause as originally made up can not and will not justify the prayer of petitioner's petition. She would show to the Court that she never in her original bill in this case sought or prayed for a divorce from bed and board or absolute; that her suit was purely a suit for separate support and maintenance and there is no divorce on her part to be made absolute as is prayed for in petitioner's petition. She alleges that the petitioner in this matter places himself in the anomalous situation of seeking to have this Court project its powers to the extent of forcing her to pray for something that she never has asked for and doesn't want. She alleges specifically that this Court has no jurisdiction to entertain this petition under the pleadings in the cause. She further states and alleges that it would be against the public policy of the State to allow a defendant who has been cast in his original suit for divorce to file a petition in the same cause praying that the Court give him relief by forcing your complainant in this particular case to accept an absolute divorce from the petitioner. She al-

leges that this is a procedure unknown, unwarranted and illegal as well as against the public policy of the State of Tennessee."

On July 23, 1943, an order was entered dismissing the petition. In the course of his opinion the Chancellor held: "* * * it is the opinion of the court that upon said pleadings the court is without jurisdiction to entertain said petition or grant any relief prayed for therein." An appeal was prayed and granted but it was never perfected.

Finally on May 4, 1953, which was approximately ten years after the dismissal of the foregoing petition, the defendant, Rufus C. Perrin, in the capacity of complainant filed an original bill against Mrs. Bessie Perrin in which he recited everything that had taken place in the original cause (Case No. 40787). He charged that when Mrs. Perrin filed her original bill she stated to him that "she never intended to live with him again"; that he had sought on numerous occasions "to iron out their differences" without avail. He charged desertion for more than two whole years, etc. Code 1932, Section 8426. On August 31, 1953, Mrs. Perrin filed a demurrer and a special plea of *res adjudicata* and reiterated again all steps that had been taken in Cause No. 40787, including all pleadings and court orders.

This last suit was heard by Hon. Larry Creson as Chancellor who sustained the foregoing plea. He further held that considering that Mrs. Perrin's original suit (Cause No. 40787) was still pending "she cannot be guilty of desertion." An appeal was prayed and granted to the Supreme Court but was never perfected. Later on the foregoing bill of Mr. Perrin was dismissed without prejudice.

On February 15, 1954, Mr. Perrin again sought to reopen the question of his right to relief from the marriage bond between himself and his wife. In this petition he charged that he had continued to try and effect a reconciliation which availed nothing. The gravamen of this petition was, as stated therein, either complainant should be awarded a divorce or that his cross-bill in this cause should be reinstated; that the whole case should be reviewed by the court.

Later another petition was filed by Mr. Perrin, as an original bill, reciting all prior proceedings and charging that Mrs. Perrin was guilty of ''desertion''. Sec. 36-801, T.C.A.

On December 15, 1954, Hon. Hamilton Little, Chancellor, etc., heard the case on the entire record and the testimony of the respective litigants, as well as other witnesses. In discussing the merits of the case he found the following facts:

''On this entire record, and particularly on the last filed petitions for modification of the original decree and for the granting of an absolute divorce to complainant, or to either of the parties, the cause was submitted to the Court and taken under advisement. This long lived cause, it may be noted, has been heard repeatedly by two former Chancellors, and is now before the present Chancellor for decision.

''At the hearing the defendant introduced evidence attempting to show that he had sought a reconciliation with the complainant, but that the complainant had refused a reconciliation, and, in fact, appeared to

derive a perverse pleasure from the existence of the present status of the parties under the separate maintenance decree.

"Both parties testified in open Court, and from this and other evidence introduced at the last hearing as well as from the entire record, *the Court is of the opinion that the evidence preponderates against the defendant;* and the Court finds that the defendant did not in good faith seek a reconciliation with the complainant, and complainant has not been guilty of willful or malicious desertion or absence, without reasonable cause, for more than two years or for any other time. On the contrary, from the testimony and the attitude of the parties, the Court is of the opinion that defendant could have brought about a reconciliation with the complainant at any time during the past many years had he sincerely so desired." (Emphasis ours.)

The cause was appealed to the Court of Appeals and that court, in a divided opinion (Bejach, Justice, dissenting), reversed the Chancellor on the authority of *Lingner v. Lingner,* 165 Tenn. 525, 56 S.W.2d 749. In ruling upon this all important question, it was said:

"No rule of public policy, no rule of exclusion of remedy, and with no hostile attitude on the part of defendant, should prevent the extension of the authority of the Court to grant an absolute divorce to the complainant under her prayer for general relief contained in her original bill, even though the request for such action by the Court be made by the defendant. There are no children involved. Neither God nor Society decrees that man shall live alone, and with the

most profound respect for all the sacred teachings with respect to divorce and dissolution of marriage vows that may be found in the Holy Scriptures, the courts should not continue to enforce a situation upon a man or woman which to us seems to be directly against the public policy and most nigh inhuman.''

The majority opinion further holds: ''We fully concur with the Opinion of the learned Chancellor in his Decree, denying the defendant the right to have a complete divorce on his behalf on the record made in this case.''

We granted *certiorari* and filed the following memorandum: .

''In presenting oral argument in this case counsel are requested to discuss the following questions:

''(1) Whether or not the original decree in Cause No. 40787, which was affirmed by the Court of Appeals, was a final decree insofar as it adjudged that Mrs. Bessie Perrin was entitled to a decree for separate maintenance, and also final as to Mr. Perrin wherein it was adjudged he was not entitled to a divorce on the grounds of cruel and inhuman treatment. Discuss *Riggs v. Riggs,* 181 Tenn. 633 (184 S.W.2d 9).

''(2) Whether or not subsequent decrees by Chancellors Swepston and Creson were final, the same being unappealed from.

''(3) Discuss the application of *res adjudicata* to the case at bar and compare *Douglas v. Douglas,* 156 Tenn. 655 (4 S.W.2d 358).''

In the original bill of Mrs. Perrin, which was filed in 1934, she only sought a decree for separate maintenance and support on the grounds of failure to provide.

As heretofore pointed out the bill was sustained by the Chancellor, and the cross-bill seeking a divorce because of cruel and inhuman treatment was dismissed. We think this was a final decree on the authority of *Riggs v. Riggs, supra.* The fact that the case was retained in court and was remanded by the Court of Appeals "for further orders" was for no purpose other than to enforce the decree for "separate maintenance". It was final as to Mr. Perrin's right to a divorce on the grounds alleged, cruel and inhuman treatment. It was final as to Mrs. Perrin's right to support, and that her husband had neglected to provide that support.

It was ten years later, or in 1943, that Mr. Perrin sought to have the Chancellor decree an absolute divorce in the original cause on the grounds heretofore stated in this opinion, to wit, they had been separated for more than eight years and he had tried unsuccessfully to effect a reconciliation. The plea of *res adjudicata* was not available as a defense at that time because the petition for the first time invoked this Court's holding in *Lingner v. Lingner, supra.* The defendant did not plead it in the wife's original suit. This petition was dismissed, *from which there was no appeal.* We think this was a final decree, the Chancellor (Swepston) holding he had no jurisdiction to compel Mrs. Perrin to accept the status of a divorce. In other words he refused to follow the Lingner decision and grant an absolute divorce on the ground of public policy.

The same question was again urged upon Chancellor Creson. He also held that he lacked jurisdiction, and that Mr. Perrin's further complaint of his wife's desertion for more than two years was without merit. His

decision in this regard is undoubtedly correct because at that time Mrs. Perrin's suit for separate maintenance was pending and her so-called "desertion" was not a legal ground for divorce. The plea of *res adjudicata* was invoked but was not specifically dealt with by the Chancellor. We think the plea was available at that time because the question of continued absence of the wife and alleged refusal to be reconciled was the same as on the second hearing before Chancellor Swepston. From this decree there was no appeal. We think it was a final decree.

The same issue is raised by Mr. Perrin in the present action, contention being made that he was entitled to a divorce under the public policy holding of this Court in the Lingner case. Chancellor Little, in an able opinion, held that while *Lingner v. Lingner, supra,* was sound as respecting the public policy of the State it could not be followed because Mrs. Perrin's suit was solely for separate maintenance.

It thus appears that this issue was presented on two former trials when the plea of *res adjudicata* was invoked by counsel for Mrs. Perrin. It might be urged upon us that the two hearings referred to should not be held final because Mrs. Perrin's continued absence and failure to be reconciled was a continuing wrong. But it cannot be considered a wrong within the meaning of our divorce statutes, because her alleged desertion was a legal impossibility in that she was living apart from her husband pursuant to a valid court decree.

" 'When a question is necessarily decided in effect though not in express terms between parties to the suit,

they cannot raise the same question as between themselves in any other suit in any other form.' " *Douglas v. Douglas,* 156 Tenn. 655, 4 S.W.2d 358, 359.

The majority opinion of the Court of Appeals was in error in holding that the plea was not available. There were two prior hearings on the merits, the continued separation of the parties, and alleged refusal by Mrs. Perrin to be reconciled.

While we might rest our decision in this case on the ground that the Court of Appeals and the Chancellor should have sustained the plea of *res adjudicata,* we feel constrained to consider the principal error, to wit, the error of the Court of Appeals in decreeing an absolute divorce on behalf of Mr. Perrin on the ground of his wife's alleged desertion based upon her continued absence and refusal to be reconciled.

The Chancellor distinguished *Lingner v. Lingner* from the case at bar, and denied Mr. Perrin an absolute divorce based upon that authority. He expressed himself as follows: "While it may be desirable that the doctrine of the Lingner case be extended so as to apply to decrees for separate maintenance, as well as decrees for a limited divorce, this Court is of the opinion that any such extension should be made by the Appellate Courts or the Legislature, rather than by a trial Court." The Court of Appeals followed the ruling in the Lingner case, as shown by the excerpts from the majority opinion quoted herein, and granted Mr. Perrin an absolute divorce.

We think it would be a dangerous precedent to hold that the doctrine of *Lingner v. Lingner* must be considered as controlling authority and authorizing a divorce

to the husband against his wife upon the sole ground of his long continued absence from home, and her alleged refusal to be reconciled.

■ While it may be true that society is not interested in enforced celibacy, persons who are neither married nor unmarried, and that the wishes of neither party control the action of the court, it must also be understood that the court cannot by judicial fiat add an additional ground for divorce that is unknown to the statute, 36-801, T.C.A. The Lingner doctrine should not be thought of as having an unqualified application based as it is on public policy. We feel that it should not be extended but should be applied only in exceptional cases for the reason that public policy does not favor the dissolution of the marriage bond.

■ It is basic in the law of divorce that marriage is considered as "an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress." 17 Am. Jur. (Divorce and Separation), Sec. 12, p. 154, citing *Maynard v. Hill,* 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654; *Bounds v. Bounds,* 135 Md. 220, 108 A. 870.

■ Where the wife is living apart from her husband pursuant to a decree for separate maintenance, she commits no wrong against the marital relation by refusing a reconciliation. *Williams v. Williams,* 33 Ariz. 367, 265 P. 87, 89, 61 A.L.R. 1264, and cases cited.

In the Williams case, it is said:

"If, as the argument assumes, it is wrong to deny him freedom from the bonds of matrimony, while he is cut off from association with his wife and children

and exposed to their indifference and perhaps hatred, the wrong done him is not a legal one for which the law affords redress * * *.

\*    \*    \*    \*    \*    \*

" 'a separation which is sanctioned and authorized by the decree or judgment of a court of competent jurisdiction is neither wrongful nor unlawful, and cannot be made a ground for divorce as against the party rightfully acting under it.' *Weld v. Weld,* 27 Minn. 330, 7 N.W. 267."

The unhappy differences between these people may be intolerable. But it must be borne in mind that relief from the bonds of matrimony can be granted only for causes denounced by the statute. The contention made herein by the complainant that because of long continued separation, and failure to effect a reconciliation, the Court should grant "one or the other an absolute divorce" is wholly untenable.

The Court of Appeals is reversed, and the Chancellor's decree is affirmed.

TOMLINSON and BURNETT, Justices, concur.

PREWITT and SWEPSTON, Justices, did not participate.