IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 14, 2001 Session

## LINDA WARD ASHER v. EUGENE ASHER

**Appeal from the Chancery Court for Claiborne County**
**No. 12,266    John McAfee, Chancellor**

**FILED MAY 9, 2001**

**No. E2000-00821-COA-R3-CV**

In this appeal from the Claiborne County Chancery Court the Appellant, Linda Ward Asher, questions whether the Chancery Court erred in granting her an absolute divorce, in failing to award her alimony *in futuro*, and in failing to require that the Appellee, Eugene Asher, be required to maintain health insurance coverage on her behalf.  Mr. Asher questions whether the Chancery Court erred in finding that funds withdrawn by him from a Putnam Investment savings account should be counted against his equitable share of the marital property and in finding that Ms. Asher should be awarded alimony. We affirm the judgment of the Chancery Court as modified and remand for further proceedings, if any, consistent with this opinion. We adjudge costs of this appeal against the Ashers equally.

**Tenn. R. App. P. 3 Appeal as of Right;  Judgment of the Chancery Court Affirmed as Modified; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., joined.

Johnny Von Dunaway, LaFollette, Tennessee, for the Appellant, Linda Ward Asher.

Robert Morris Estep, Tazewell, Tennessee, for the Appellee, Eugene Asher.

### OPINION

This is an appeal from a judgment entered by the Chancery Court for Claiborne County in a divorce action between the Appellant/Plaintiff, Linda Ward Asher, and the Appellee/Defendant, Eugene Asher.

Ms. Asher raises three issues for our review which we restate as follows:

1.  Did the Chancery Court err in granting Ms. Asher an absolute divorce when she only sought a legal separation?

2. Did the Chancery Court err in failing to award Ms. Asher alimony *in futuro*?

3. Did the Chancery Court err in failing to require that Mr. Asher maintain health insurance coverage on behalf of Ms. Asher?

The following three additional issues, which we also restate, are raised by Mr. Asher:

1. Did the Chancery Court err in finding that monies withdrawn by Mr. Asher from a Putnam Investment savings account should be counted against his equitable share of the marital assets?

3. Did the Chancery Court err in granting Ms. Asher alimony given the duration of her marriage to Mr. Asher?

2. Did the Chancery Court err in granting Ms. Asher alimony when she had already received a Circuit Court judgment of $35, 000.00 in an assault suit against Mr. Asher?

Our standard of review of this non-jury case is, as mandated by Tenn. R. App. P. 13(d), *de novo* upon the record of the proceedings below, with a presumption of correctness unless the preponderance of the evidence is otherwise. No such presumption exists as to findings of law. *Campbell v. Florida Steel Corporation,* 919 S.W.2d 26 (Tenn.1996).

Mr. and Ms. Asher were married on January 10, 1992. In November of 1995 the Ashers' relationship began to deteriorate and in October of 1996 they separated. During this time Mr. Asher became involved in an extramarital relationship with another woman who subsequently became pregnant with his daughter who was born in March of 1998.

On September 3, 1997, Mr. Asher physically assaulted Ms. Asher and as a consequence Ms. Asher suffered a hyperextension injury to her neck which required surgical treatment and left her with a twelve per cent permanent partial impairment to her body as a whole. On September 11, 1997, Ms. Asher filed a complaint in the Circuit Court for Claiborne County "for bodily injuries, medical expenses, pain and suffering, lost wages, loss of earning capacity and related expenses". On October 19, 1998, the Circuit Court entered its judgment in the case awarding Ms. Asher damages in the amount of $35,000.00. In addition, Mr. Asher pled guilty to aggravated assault before the Criminal Court of Claiborne County which adjudged that he be placed on supervised probation for two years with restitution for lost wages and medical bills reserved until a later date.

Mr. Asher initially filed a complaint for divorce in the Claiborne County Chancery Court on October 16,1996; however, that complaint was dismissed upon a finding that Mr. Asher had offered perjured testimony in the case. Thereafter, on October 14, 1998, Ms. Asher filed a complaint for

divorce and/or legal separation[1] in that court on grounds of inappropriate marital conduct rendering cohabitation unsafe and improper. On November 16, 1998, Mr. Asher filed an answer and counter complaint requesting that he be granted an absolute divorce from Ms. Asher on the grounds of inappropriate marital conduct rendering cohabitation unsafe and improper, adultery and separation for more than two years.

Trial of the divorce case was conducted on February 4, 2000, and on February 29, 2000, the Chancery Court entered its judgment which granted Ms. Asher an absolute divorce and decreed that she be awarded a judgment against Mr. Asher in the amount of $14,690.51 representing her equitable share of the value of marital assets including assets sold, transferred or concealed by Mr. Asher prior to trial. The Court further decreed that Ms. Asher be awarded $8,577.17 representing insurance proceeds from the casualty loss of a truck which belonged to the parties. The Court also awarded Ms. Asher alimony of $300.00 per month for thirty six months and ordered that the marital residence be sold with one-half of the net sale proceeds to be paid to Ms. Asher in satisfaction of the $14,690.51 judgment. Finally, the Court stated that Ms. Asher shall be responsible for payment of her medical insurance coverage.

Both Mr. and Ms. Asher filed motions for reconsideration, in response to which an order was entered by the Court on March 29, 2000, designating the $300.00 per month alimony award granted Ms. Asher as rehabilitative alimony and increasing Ms. Asher's judgment against Mr. Asher by $4,671.18. This appeal followed.

The first issue in this matter contends whether the Chancery Court erred in granting Ms. Asher an absolute divorce when she only requested a legal separation. We do not find that the Court erred with respect to this issue.

T.C.A. 36-4-119 states as follows:

> Decree of court generally.- If, upon hearing the cause, the court is satisfied that the complainant is entitled to relief, it may be granted either by pronouncing the marriage void from the beginning, or by dissolving it forever and freeing each party from the obligations thereof, or by a separation for a limited time.

This court has interpreted the language set forth in T.C.A. 36-4-119 as vesting in the trial judge broad discretion as to the type and extent of relief granted. See *Hutton v. Hutton*, 584 S.W. 2d 670 (Tenn. Ct. App. 1979).

Furthermore, T.C.A. 36-4-102 which pertains to a complaint for legal separation states as follows at part (d):

---

[1]The complaint filed by Ms. Asher on October 14, 1998 is styled 'Complaint for Divorce and/or Legal Separation' and Ms. Asher asserts therein that she is entitled to a legal separation or divorce from bed and board. However, she prays only for a legal separation.

Notwithstanding this section, a party who can establish grounds for divorce from the bonds of matrimony pursuant to section 36-4-101 shall be entitled to an absolute divorce pursuant to the provisions of this chapter.

Among the grounds for divorce set forth at T.C.A. 36-4-101 are the following:

(3) Either party has committed adultery.

(11) The husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe or improper which may also be referred to in pleadings as inappropriate marital conduct;

(15) For a continuous period of two (2) or more years which commenced prior to or after April 18, 1985, both parties have lived in separate residences, have not cohabited as man and wife during such period, and there are no minor children of the parties.

Our review of the record reveals that there is sufficient evidence, based on the testimony of both Mr. and Ms. Asher, for the Court to have determined that each of the above grounds for an absolute divorce existed under the circumstances of this case. In addition, both Mr. and Ms. Asher testified that there is no hope of reconciliation between them.

While we acknowledge that Ms. Asher prayed for legal separation only in her complaint, the Chancery Court was not restricted by her request. As stated by the Supreme Court of this State in *Lingner v. Lingner,* 56 S.W.2d 749 (Tenn. 1933) at page 752:

The wishes of neither party in a divorce case control the actions of the court. The court, of course, gravely considers the desires of the party wronged, but the court reserves the right to determine for itself what is best for that party.

In the *Lingner* case the Supreme Court held that a court hearing a divorce action can appropriately order an absolute divorce over the objection of the wronged spouse if reconciliation between the parties is deemed an impossibility and if no societal interest can be served by perpetuation of the union.

Ms. Asher argues that a societal interest will be served by allowing the marriage to continue in that she will thereby be provided with health insurance as Mr. Asher's wife under the insurance coverage provided by his employer. Ms. Asher contends that because of her medical condition, which resulted from Mr. Asher's assault upon her in September of 1997 she will be unable to obtain her own insurance and that the public will, therefore, be left to assume the burden of her future medical expenses.

The Chancery Court, in its opinion of February 29, 2000, recognized Ms. Asher's need for insurance and calculated her award of alimony at $300.00 per month for thirty six months to allow for payment of insurance premiums under COBRA for the maximum period that such coverage will be available after the divorce. In its order of March 29, 2000, the Court decreed that the award of alimony be designated 'rehabilitative' which will allow for modification of the amount awarded should the cost of the premiums increase. We find no proof in the record that Ms. Asher's current medical problems will require medical treatment after thirty six months and, therefore, we find no merit in Ms. Asher's argument that she will become a public ward because of future medical costs.

Next, Ms. Asher asserts that the Chancery Court erred in failing to award alimony *in futuro*. We disagree.

A trial court is allowed broad discretion in determining the amount and duration of spousal support. See *Watters v. Watters*, 959 S.W.2d 585 (Tenn. Ct. App. 1997). And, as between *in futuro* alimony and rehabilitative alimony, the Legislature has expressed a preference for the latter by enacting T.C.A. 36-5-101(d)(1) which proclaims that "it is the intent of the General Assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance."

As stated by the Tennessee Supreme Court in *Self v. Self*, 861 S.W.2d 360, 361 (Tenn.1993):

> The statute reflects an obvious legislative policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long term support is necessary.

Ms. Asher asserts that economic rehabilitation is not feasible in this case and that long term support is necessary. In support of this assertion, Ms. Asher refers to the consequences of the injuries that she suffered from the assault upon her by Mr. Asher. As much as we deplore the actions of Mr. Asher, we cannot ignore the fact that Ms. Asher has already been awarded $35,000.00 by the Circuit Court to compensate her for the consequences of that assault. Although Ms. Asher contends that Mr. Asher has rendered himself judgment proof and that the $35,000.00 is not collectible, the judgment is valid and remains potentially collectible in the future irrespective of current prospects for collection. Additionally, we note that this judgment is not subject to discharge by bankruptcy, it being a debt for willful and malicious injury. It is our view that rehabilitative alimony was properly awarded in this case.

Although we find that the Court did not err in awarding rehabilitative alimony, we also find that the amount of alimony awarded is inadequate and should be increased.

Three factors which the trial court is required to consider in determining the proper amount of spousal support under T.C.A. 36-5-101(d)(1) are as follows:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

> (I) The standard of living of the parties established during the marriage.

> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so;

Ms. Asher is forty two years old and is currently unemployed. She has obtained a G.E.D. Although she has taken college level courses, she does not have a college degree. The record shows that her only source of money at the time of the divorce was a boarder who paid monthly rent of $200.00 along with the monthly utility expenses on the residence; however, this source of income was to end upon sale of the residence pursuant to the Chancery Court's judgment. Mr. Asher is forty seven years old and receives an annual income of $25,770.84 from disability benefits. Considering Ms. Asher's age, level of education and the fact that she is currently unemployed, it appears likely that she will require additional monies in order to achieve a reasonable level of rehabilitation.

During the marriage, prior to the parties' separation, Ms. Asher had a place to live and was supplied with the basic necessities of life. The Chancery Court has contemplated that, out of the $300.00 per month alimony award, Ms. Asher will be paying $237.38 of the $300.00 for her health insurance. This will leave her with a mere $62.62 each month to satisfy her basic living expenses. It is our conclusion that this will leave Ms. Asher in a financial condition inferior to that experienced by her during her marriage.

Finally, the Chancery Court found, and we agree, that Mr. Asher was the party at fault in this divorce. As confirmed by his own testimony and other evidence in the record, Mr. Asher engaged in an extramarital relationship with another woman and engaged in inappropriate marital conduct by assaulting his wife.

The courts in Tennessee have held that the amount of alimony should be determined so that the wronged spouse is not left in a worse financial condition than he or she experienced before the other spouses's misconduct brought about the divorce. See *Aaron v. Aaron*, 909 S.W.2d 408 (Tenn. 1995) and *Shackleford v. Shackleford*, 611 S.W.2d 598 (Tenn. Ct. App.1980). In consideration of the facts set forth above, we find that the award of alimony should be increased from $300.00 per month for thirty six months to $500.00 per month for the same period.

The third issue raised by Ms. Asher in this appeal questions whether the Chancery Court erred in failing to require that Mr. Asher maintain her health insurance. We do not find that the Chancery Court erred in this regard.

Ms. Asher argues that Mr. Asher is bound to pay support for disabilities incurred during the marriage, simply as a duty arising out of the nature of the marital relationship itself. As noted in its opinion, the Chancery Court contemplated Ms. Asher's medical coverage for thirty six months in its award of alimony. We find no proof in the record that Ms. Asher will require medical treatment for more than thirty six months for any disabilities she incurred during the marriage.

The next issue we address is raised by Mr. Asher and concerns whether the Chancery Court erred in determining that funds withdrawn by him from a Putnam Investment savings account should be counted against his equitable share of the marital estate.

The record shows that, during the marriage, Mr. Asher controlled a savings account set up by his employer through Putnam Investment. In January and July of 1996 Mr. Asher withdrew funds from this account in the total amount of $20,575.85. In consideration of the coincidence of these withdrawals with the breakdown of the marriage and the subsequent divorce, the Chancery Court found that these funds were withdrawn in anticipation of divorce. Consequently, when the Court calculated Ms. Asher's equitable share of the marital property it allowed her an equity of $10,287.93 for one half of the monies withdrawn from the Putnam savings accounts.

Mr. Asher contends that the funds withdrawn from the Putnam accounts were used by him to diminish marital debt and that the Court erred in failing to consider that fact when it awarded Ms. Asher one half of the funds. In support of his argument Mr. Asher relies on a list of debt filed in the Chancery Court as exhibit 21 (see appendix A). However, our review of this exhibit does not persuade us that it presents proof that the Putnam savings funds were used to reduce marital debt. Exhibit 21 merely purports to show a summary of debts and debt amounts owed by the Ashers in October, 1996, in November, 1997 and at the time of the divorce trial in February, 2000. Exhibit 21 offers no proof as to who paid these debts or as to the source of the monies used to pay these debts. Mr. Asher's argument that the Putnam savings funds were used to reduce marital debt is not supported by the record and is without merit.

The second issue raised by Mr. Asher is whether the Chancery Court erred in granting Ms. Asher alimony given the duration of the parties' marriage. The record shows that Mr. and Ms. Asher married in January, 1992, separated in October, 1996, and divorced in February, 2000. The parties were, therefore, married for eight years and resided together for four of those eight years. Mr. Asher offers no legal support for his contention that Mr. and Ms. Asher's marriage was of such short duration as to prevent an award of alimony and we do not find that the Chancery Court erred in this regard.

Finally, Mr. Asher asserts that that the Chancery Court erred in awarding Ms. Asher alimony because she had already received the $35,000.00 Circuit Court judgment against Mr. Asher for the September,1997 assault. Mr. Asher maintains that the doctrine of *res judicata* prohibits the award of alimony by the Chancery Court because the issues relating to alimony were the same issues litigated and determined in the prior Circuit Court lawsuit.

Generally, in order to prove a plea of *res judicata,* it is necessary that the record or a copy of the record of the former case be put in evidence. See *American National Bank v. Bradford*, 188 S.W.2d 971 (Tenn. Ct. App. 1945). With respect to the Circuit Court lawsuit, Mr. Asher has only provided us with copies of Ms. Asher's complaint, her amended complaint, her motion for issuance of a temporary injunction, a notice on the motion for temporary injunction and the Circuit Court's judgment. In her complaint, Ms. Asher demands that she be compensated for "bodily injuries, medical expenses, pain and suffering, lost wages, loss of earning capacity and related expenses". The Circuit Court's opinion, which is incorporated in its judgment (see appendix B), recites the circumstances of the assault and notes that Ms. Asher received emergency medical treatment, underwent surgery and incurred a twelve per cent permanent partial disability to her neck. The opinion further holds that Mr. Asher committed the assault and caused Ms. Asher's injuries.

The primary consideration of the Chancery Court in awarding Ms. Asher alimony was that she have adequate health insurance for a period of rehabilitation. In addition, we have determined that Ms. Asher should have additional alimony based upon the parties' relative earning capacity, upon the standard of living established during the marriage and upon the fact that Mr. Asher was at fault in the breakup of the marriage. There is nothing in the record before us to show that the Circuit Court judgment was based upon any of the factors which support an award of alimony by the Chancery Court. We acknowledge that a previous judgment is *res judicata* not only as to those matters actually determined in the prior action but also as to matters which reasonably could have been determined in the prior action. See *American Nat'l Bank and Trust v. Clark*, 586 S.W.2d 825 (Tenn. 1979). However, it is our determination that matters related to the award of alimony in this divorce case would not have been appropriate matters for litigation in the assault case. Accordingly, we find that the doctrine of *res judicata* will not preclude an award of alimony in this case.

For the foregoing reasons the judgment of the Chancery Court is affirmed as modified and the cause is remanded for such further proceedings, as may be necessary, and for collection of costs below which are, as are costs of appeal, adjudged against the Ashers equally.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE