IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 16, 2001

## SHARON KAYE OUTTEN v. RUSSELL CAMPBELL

**Appeal from the Chancery Court for Sumner County**
**No. 99D-416     Tom E. Gray, Chancellor**

---

**No. M2001-00490-COA-R3-CV - Filed May 23, 2002**

---

A Tennessee woman filed a petition in a Tennessee court to establish paternity, naming a Georgia resident who had minimal contacts with the State of Tennessee. The defendant failed to respond, and the court granted the petitioner a default judgment, ordering the defendant to pay retroactive child support of over $63,000. The defendant's employer subsequently began withholding money from his paycheck pursuant to a wage assignment. We find that the judgment was void *ab initio* because the court lacked personal jurisdiction over the defendant. We also find that the defendant's subsequent appearance in the Tennessee court for the purpose of objecting to jurisdiction and obtaining a refund of the money he lost through wage assignment cannot revive the void judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

L. G. Burnett, Jr., Nashville, Tennessee, for the appellant, Russell Campbell.

Paul G. Summers, Attorney General & Reporter; Stuart F. Wilson-Patton, Senior Counsel, for the appellee, State of Tennessee, ex rel., Sharon Kaye Outten.

**OPINION**

### I.  JASON KEITH REDDING

Jason Keith Redding was born in Savannah, Georgia, on August 7, 1981. His mother was Sharon Kay Outten, the petitioner in this case. The space in Jason's birth certificate for a father's name was left blank, but Ms. Outten and Russell Campbell, who was named as the respondent, lived together in Georgia for a short period of time prior to Jason's birth. When Jason was about six weeks old, Ms. Outten came to Tennessee to visit relatives, and did not return to Mr. Campbell.

Except for a brief visit when Jason and his mother came to Georgia in 1983, Mr. Campbell did not hear from or see Jason again until 1993. In that year, Sharon Outten called Russell Campbell in Atlanta, and asked if he wanted to see Jason during Christmas. Mr. Campbell came to Tennessee and stayed with his father. He was able to see the now twelve-year-old Jason, and to spend the holidays with him.

In 1994, Ms. Outten filed a petition in Williamson County, Tennessee against Mr. Russell, under the Uniform Reciprocal Enforcement of Support Act (URESA). Upon discovering that Ms. Outten had moved to Alaska, the trial court dismissed the petition without prejudice.

In 1995, Sharon Outten and Jason were living in Fairbanks, Alaska. Ms. Outten called Mr. Campbell, and said she wanted Jason to stay with him. She put the young man on a plane, and he flew from Alaska to Atlanta, Georgia. Jason stayed with Russell Campbell in Atlanta for six months, until Ms. Outten had a change of heart, and called Mr. Campbell to say she wanted Jason back with her. Airline tickets were mailed to Atlanta, and Jason returned to Alaska.

Mr. Campbell had no further contact with Jason or Ms. Outten again until he was notified that Jason had been killed in a car wreck on April 10, 1999. Mr. Campbell came to Tennessee for the funeral and spent two days in the state.

## II. A PATERNITY SUIT

On August 26, 1999, Sharon Kaye Outten filed a Petition to Establish Paternity in the Chancery Court of Sumner County. She claimed that Russell Campbell was Jason's natural father, stated that she had been appointed the administrator of Jason's estate, and recited that,

> "this petition is being filed so that the Petitioner can ascertain the amount of inheritance, if any, the Respondent will be entitled to receive for (sic) the estate of Jason Keith Redding, and the amount of child support the Respondent was obligated to pay during the life of Jason Keith Redding."

The Secretary of State served Mr. Campbell with a summons by mail and a copy of the petition pursuant to the Long-Arm Statutes, Tenn. Code. Ann. § 20-2-201, et seq. Mr. Campbell did not respond, so Ms. Outten filed a Motion for Default. The court conducted a hearing on the petition, and entered an order on January 26, 2000, which stated that Russell Campbell was Jason's natural father, and that he was therefore obligated to pay child support of $363 per month for 210 months, or $76,230 total. The court further found that Mr. Campbell was entitled to a credit in the amount of $12,500, representing half of the proceeds received in Jason's wrongful death case, thereby reducing his obligation to $63,730. Since Mr. Campbell did not appear at the hearing, the court's order was based solely upon the record of the case and upon the arguments and briefs of the petitioner.

In March of 2000, Mr. Campbell received a Notice of Income Assignment, and a portion of his regular paycheck began to be withheld and forwarded to the Sumner County Chancery Court. There is nothing in the record to indicate that the order of the Tennessee court was domesticated by a Georgia court, so it is unclear how the wage assignment came about. In any case, it got Mr. Campbell's attention, and he hired a Tennessee attorney to protect his interests.

On May 24, 2000, Mr. Campbell's attorney filed a Motion to Set Aside or Dismiss the Default Judgment under Rules 55.02 and 60.02 Tenn. R. Civ. P. The motion recited some of the facts we have discussed above, stated that Mr. Campbell never lived in Tennessee and never had any contacts with the petitioner in this state, and declared that the respondent did not have the minimum contacts with this state that are required to confer jurisdiction on its courts. *See International Shoe v. Washington*, 326 U.S. 310 (1945). The respondent asked that the default judgment be set aside, the paternity action dismissed, the wage assignment released, and that a judgment be rendered for the support withheld from his wages.

At this point, Ms. Outten's attorney of record withdrew from the case, and the State became involved through its Title IV-D child support enforcement rights. The Sumner County District Attorney filed a response in opposition to Mr. Campbell's motion, which argued that since Mr. Campbell was served with process and did nothing, the court had the right to enter a default judgment against him. The response also noted that Mr. Campbell had never denied paternity of Jason.

The trial court ordered the parties to file Memoranda of Law in support of their respective positions. Mr. Campbell's memorandum discussed in some detail the requirements for personal jurisdiction as set out by the United States Supreme Court and the courts of this state. The State did not address the question of jurisdiction, but focused on the limited availability of relief when parties are acting pursuant to Rule 60.02.

The court considered both parties' filings and positions, and entered a Memorandum and Order on January 19, 2001. The court apparently recognized that personal jurisdiction was a problem in this case, but stated that objections to lack of personal jurisdiction may be waived by a party's consent, or by failure to object in a timely way. The court concluded that by failing to act until long after the default judgment had become final, Mr. Campbell had waived any jurisdictional objections to the court's order, and that he had failed to show good cause for the court to set aside the default judgment. This appeal followed.

### III. PERSONAL JURISDICTION

The State admits that when Ms. Outten filed her petition, the trial court lacked personal jurisdiction over Mr. Campbell because his contacts with this state were so tenuous that they did not meet the test first announced in the seminal case of *International Shoe v. Washington,* 326 U.S. 310 (1945). We therefore need not discuss that case in any detail, except to recite its core holding, which is central to questions of personal jurisdiction: a state's courts can assert personal jurisdiction over

a non-resident defendant only if the defendant has had such minimum contacts with the state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316. *See also Isaacson v. Fenton*, No. 03A0l-9804-JV-00119 (Tenn. Ct. App. at Knoxville, filed July 30, 1998).

It is well established, however, that personal jurisdiction (unlike subject matter jurisdiction) can be conferred by express or implied consent. *Davis v. Mitchell*, 178 S.W.2d 889 (1944). In other words, a defendant can voluntarily choose to waive a court's lack of personal jurisdiction over him. In this case, the trial court ruled that by failing to respond to Ms. Outten's petition in a timely way, Mr. Campbell implicitly waived his objections to lack of personal jurisdiction. Mr. Campbell challenged the trial court's ruling on appeal, and the State concedes the point.

The State admits that when a court entertains a pleading against a defendant who does not have sufficient minimal contacts with the state in which that court sits, the defendant is not required to respond. He may either enter a limited (or "special") appearance for the purpose of challenging personal jurisdiction, or he may ignore the proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding. Although this may be a risky course, it is more or less what Mr. Campbell has done.

Since the State admits that the trial court's order of January 26, 2000 is void for lack of personal jurisdiction, it bases its entire argument on appeal on Mr. Campbell's motion of May 24, 2000. The appellee notes that the motion contained a plea for positive relief, i.e. for return of the money withheld from his paycheck. The appellee contends that by including such a plea, Mr. Campbell was voluntarily submitting himself to the jurisdiction of the Tennessee court, and waiving any jurisdictional defects in the State's case.

We do not see it that way. Under former rules of pleading, the distinction between a defendant's general appearance in court for the purpose of defending a case on the merits, and a so-called special appearance, in which a defendant appears for the sole purpose of contesting the court's jurisdiction over him, created a trap for the unwary. Under those rules, the inclusion of any claim, defense, or plea for relief that was deemed to go to the merits of a case could turn a special appearance into a general appearance, and thus a voluntary waiver of the defendant's jurisdictional argument.

Our Supreme Court adopted a new approach, in keeping with the modern trend against such hyper-technical rules in the case of *Landers v. Jones*, 872 S.W.2d 674 (Tenn. 1994), which stated that the courts

> ". . . should only find a general appearance that waives a defendant's right to contest personal jurisdiction when the defendant has recognized the proper pendency of the cause by making a motion that goes to the merits or by filing an answer, without challenging personal jurisdiction. To the extent that prior judicial decisions can be read as requiring otherwise, they are overruled."

-4-

872 S.W.2d at 677

Perhaps more importantly, any judgment a court renders against a defendant over whom the court does not have personal jurisdiction is not merely voidable, but void. *Topham v. L.L.B. Corporation*, 493 S.W.2d 461 (Tenn. 1973); *Hamm v. Hamm*, 204 S.W.2d 113 (Tenn. Ct. App. 1947). A void judgment cannot be revived, even when the passage of time has rendered it final in accordance with the Rules of Civil Procedure.

Further, a void judgment is, by definition, one that has no legal force or effect (Black's Law Dictionary, 4th Ed., 1957). In this case, however, an admittedly void judgment did have an effect in the real world when it resulted in money being withheld from Mr. Campbell's paycheck. When the defendant asked the court to undo the results of its illegal judgment, it does not comport with our "traditional notions of fair play or substantial justice" to deem this request to be a waiver of his objections to the judgment's illegality.

Finally, we must state that our ruling does not prevent the appellee from pursuing the question of paternity and support through other channels, such as the Uniform Interstate Family Support Act, Tenn. Code. Ann. § 36-5-2201, et seq., which was enacted to deal with questions of support between parties in different states.

## IV.

The judgment of the trial court is reversed. Remand this cause to the Chancery Court of Sumner County for further proceedings consistent with this opinion. Tax the costs on appeal to the State of Tennessee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.